HENRY G. NEWHALL, Respondent, *v.* CHRISTOPHER A. WYATT, Defendant.

In the Matter of the Claim of JAMES R. CLARK, Appellant, *v.* C. A. WYATT & COMPANY.

The payment of money to a creditor, who receives it in discharge of the existing debt, innocently and without knowledge or means of knowledge that the debtor paying has no rightful ownership of the fund, is good and effectual, and the true owner cannot recover the money of the recipient.

C., a creditor of the firm of W. & Co., which firm was composed of W. alone, drew drafts on the firm, which were accepted by it, and C. procured them to be discounted. Thereafter a new firm was formed, bearing the same firm name, composed of W. & N. These drafts were paid by W. out of the funds of the new firm, and were surrendered and canceled. Neither the payee nor C. knew at the time of payment that a new firm had been formed. The new firm incurred an indebtedness to C., and subsequently its assets went into the hands of a receiver. Upon an accounting as to his claim against the new firm, C. was charged with the amount of the drafts as a set-off, on the ground that he was a debtor to it to that amount. *Held*, error.

*Newhall* v. *Wyatt* (68 Hun, 1), reversed.

(Argued October 2, 1893; decided October 17, 1893.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made March 17, 1893, which affirmed an order of Special Term overruling exceptions to the report of a referee and confirmed said report.

The facts, so far as material, are stated in the opinion.

*James Byrne* for appellant. There was no special partnership existing between Henry G. Newhall and Christopher A.

Wyatt so far as the rights of James R. Clark in this proceeding were concerned. (*Ex parte Howard*, 9 Wall. 175; Herman on Estoppel, § 129, *et seq.; Williams* v. *Gibbs*, 17 How. 239; *Smith* v. *Argall*, 6 Hill, 479; *Bowen* v. *Argall*, 24 Wend. 496; *Andrews* v. *Schott*, 10 Barr, 47; *Ontario Bank* v. *Hennessey*, 48 N. Y. 545.) The drafts, to the extent of $6,900, accepted by the old firm and paid at maturity after November first, should not have been allowed as a counterclaim in the account stated by the referee against James R. Clark. (*Davis* v. *Smith*, 29 Minn. 201; *Lancey* v. *Clark*, 64 N. Y. 209; *Eastman* v. *Plumer*, 32 N. H. 238; *Greening* v. *Patten*, 51 Wis. 150; *Burr* v. *Smith*, 21 Barb. 262; Chitty on Bills, 304, 436; *Moriarty* v. *Bailey*, 46 Conn. 592; *Calkins* v. *Smith*, 48 N. Y. 614; *Sweet* v. *Morrison*, 103 id. 235; *M. S. Bank* v. *Pierce*, 137 id. 444; *Southwick* v. *F. N. Bank*, 84 id. 420; *Locke* v. *Lewis*, 124 Mass. 1.) The whole balance due on all goods shipped by James R. Clark to both the old and the new firm of C. A. Wyatt & Co. should have been allowed as a valid claim against the assets in the hands of the receiver. (*Peyser* v. *Myers*, 135 N. Y. 599; Story on Part. § 152; *Rolfe* v. *Flower*, L. R. [1·C. P.] 27; *Ex parte Whitmore*, 3 Deac. 365; *Earon* v. *Mackey*, 106 Penn. St. 452; Pars. on Part. 432, 435; Lindley on Part. 208; *Winship* v. *Bank of U. S.*, 5 Pet. 529; *Chester* v. *Dickerson*, 54 N. Y. 1; *Bradner* v. *Strang*, 89 id. 299; *Strang* v. *Bradner*, 114 U. S. 555; *Dunham* v. *Griswold*, 100 N. Y. 224; *Harley* v. *Bank*, 76 id. 618; *Jiegla* v. *Trouttel*, 120 id. 21; *Campbell* v. *Campbell*, 40 N. Y. S. R. 817; *Young* v. *Hill*, 69 N. Y. 162; *Towsley* v. *Dennison*, 45 Barb. 490.) Even if the new firm of C. A. Wyatt & Co. were only responsible for transactions between them and James R. Clark arising out of shipments made after their formation, and for the goods of James R. Clark, and their proceeds actually shown to have come into their hands, the referee erred in his conclusion as to the amount of this liability. (1 Greenl. on Ev. § 79.) The goods admitted to have been delivered by James R. Clark to the new firm should have

been allowed for at their actual value as proved before the referee. (Code Civ. Pro. §§ 1018, 1217.)

*L. Laflin Kellogg* for respondent. The claimant is not entitled to prove his claim against the receiver for any goods consigned to the old firm of C. A. Wyatt & Co., excepting to the amount of $500, the goods actually received by the new firm. (*Serviss* v. *McDonnell*, 107 N. Y. 260; *Wheat* v. *Rice*, 97 id. 296; *U. Bank* v. *Underhill*, 102 id. 336; *Thorne* v. *Smythe*, 21 Wend. 365; *Brooks* v. *Evans*, 5 Watts, 196; *N. Bank* v. *Thomas*, 47 N. Y. 15; *N. Bank* v. *Ingraham*, 58 Barb. 608; *Oliphant* v. *Matthews*, 16 id. 608; *Baxter* v. *Plunkett*, 4 Houst. 450; *Peterson* v. *Roach*, 32 Ohio St. 374; *King* v. *Farrar*, 22 Penn. St. 21.) The new firm is entitled to be credited with any moneys paid out by it which inured to the benefit of the claimant after November 1, 1888, as against the goods consigned to that firm. (*Gerry* v. *Cockroft*, 1 J. & S. 146; *Dob* v. *Halsey*, 16 Johns. 38; *Rogers* v. *Batchelor*, 12 Pet. 221, 489; *Green* v. *Caldwell*, 5 Cow. 489; *Bendell* v. *Hetrick*, 3 J. & S. 405; *Williams* v. *Walbridge*, 3 Wend. 415; *Joyce* v. *Williams*, 14 id. 415; *Rust* v. *Hansett*, 5 J. & S. 467; *Butler* v. *Stocking*, 8 N. Y. 410; *F. N. Bank* v. *Green*, 43 id. 219; *Roberts* v. *Ely*, 113 id. 131; *Long* v. *Russell*, 83 id. 606; *Buel* v. *Boughton*, 2 Den. 94.) The claimant must deduct the value of the goods replevined from the amount claimed, notwithstanding the pendency of the replevin suit. (*Wile* v. *Bromslein*, 35 Hun, 68; *Moller* v. *Taska*, 87 N. Y. 169; *Morris* v. *Rexford*, 18 id. 552.) There is no merit in the claim made by the claimant that he is entitled to recover for goods to the value of $15,531.79, instead of, as allowed by the referee, $13,983.68. (*Eldred* v. *Eames*, 115 N. Y. 401.)

FINCH, J. In an action brought by the plaintiff for a dissolution of the partnership of C. A. Wyatt & Co., a receiver was appointed, who advertised for the presentation of claims against the firm, as preliminary to the winding up of its

affairs.   James R. Clark appeared as one of the creditors, and presented a claim for something over $33,000.   Upon the application of the receiver, a referee was appointed to take evidence and pass upon this claim, and his report, awarding the creditor only about $3,000, has been confirmed by the court and approved by the General Term on appeal.   The creditor comes to this court complaining of the result, and insisting that his claim has been improperly reduced.

Most of the conclusions reached by the referee seem to us justified by the facts, but one of them, involving a serious amount, we deem erroneous and an injustice to the creditor.   That error consists in charging Clark with the amount of five drafts drawn by him, amounting to nearly seven thousand dollars, on the theory that he was debtor in that amount to the firm, and should allow it by way of set-off against his own demand.   The facts underlying the question raised are, in substance, the following :

There were two firms bearing the same name of C. A. Wyatt & Co.   The first consisted of Wyatt alone, no one else having an interest with him.   The second, formed later, was composed of Wyatt and the plaintiff, Newhall, as special partner.   Clark was a creditor of each firm, which we may distinguish as the old and the new.   Before the formation of the latter, he drew five drafts upon the old firm for sums which were concededly due to him, payable to the order of Conway, Gordon & Garnett, bankers, which were accepted by C. A. Wyatt & Co., and discounted by the bankers, Clark remaining contingently liable as drawer, and receiving the proceeds.   All this occurred before the formation of the new firm, and was, in every respect, a regular, usual and proper business transaction.   These acceptances, the referee finds, were paid by Wyatt out of the funds of the new firm.   The appellant criticizes the finding, mainly because the bank account of the new firm was a continuation of that of the old, without break or change ; but the proof so far warrants the finding, as to make it conclusive upon this appeal.   The payees of the draft had no reason to suspect the real source

from which the money came. They had no knowledge of the existence of the second firm, and necessarily believed, as they had a right to believe, that the payment was made by the real debtors out of their own funds. They accepted the payment, surrendered up the drafts, and of course canceled and extinguished the contingent liability of the drawer. And yet, upon this payment, the referee grounds his conclusion that Clark thus became a debtor to the new firm, and that the amount of the drafts which, through the discount, went to his benefit, should be applied as a set-off against an equal portion of the debt due him from the new firm.

It is undoubtedly the rule that one partner may not appropriate the property or money of the firm to the payment of his own debt without the consent of his copartners, and that if he does so the property misapplied may be followed and recovered until it reaches the hands of a *bona fide* purchaser for value. But I think it is equally well settled that the payment of money to a creditor, who receives it in discharge of an existing debt innocently and without knowledge or means of knowledge that the debtor paying had no rightful ownership of the fund, is good and effectual, and does not subject the recipient to a recovery by the true owner. That doctrine was very explicitly asserted in *Stephens* v. *Board of Education* (79 N. Y. 187). In that case one Gill, who was a member of the board of education of the city of Brooklyn, had converted to his own use the money of the board, and so became indebted to it for the amount abstracted. In order to procure the means of payment, Gill forged a mortgage upon the land of another and sold it to the plaintiff, receiving from him the proceeds and depositing them to his own credit. He then drew a check for the amount of his debt to the board, and with it paid that debt in full, the board receiving the money and expending it in its own business. When the plaintiff discovered the forgery and fraud he sought to follow his own money into the hands of the board and recover it back, as in this case the new firm seeks to regain its money misappropriated by Wyatt from the hands of Clark as the

beneficial recipient.    This court held that there could be no
such recovery.    In the case cited the plaintiff contended that
his money had been virtually stolen and could be followed and
regained until it reached the hands of an innocent party
giving at the time a valuable consideration therefor, and that
the discharge of a precedent debt was insufficient to afford
protection against the true owner.    This court refused to
accede to that doctrine, arguing that money has no ear-mark;
that while the purchaser of a chattel or chose in action may
generally ascertain the title of his vendor, that is not so as to
money, the title to which in the possessor cannot usually be
traced to its source; and that no case had been referred to in
which the doctrine that an antecedent debt is not a sufficient
consideration to cut off certain equities had been applied to
money received in good faith and the ordinary course of busi-
ness in payment of a debt; and that such a rule would
obviously introduce confusion and danger into all commercial
dealings.    This general doctrine was further illustrated and
approved upon another condition of the facts in *Southwick*
v. *First National Bank of Memphis* (84 N. Y. 434, 435),
and seems to me well founded both in justice and the neces-
sities of business.

We may treat the case, therefore, irrespective of the fact
that the money could not have been collected back from the
bankers, who gave up their drafts, and never fixed the liability
of the drawer on the faith of the payment made, and treat the
case as if the money had been paid directly to Clark, upon the
debt due him from the old firm.    His good faith cannot be
questioned.    He did not even know that a new firm had been
formed, or that there could be any possible question as to the
ownership of the moneys paid, and he may hold the pay-
ment made.    A contrary rule would do him great injustice,
and without the excuse of fault or negligence on his part.    If
his drafts had been unpaid, and his debt against the old firm
had remained as desperate and valueless, he would not have
extended further credit and suffered an added debt of a large
amount to have accumulated.    He cannot be restored to his

original position. There is no proof that the new firm was insolvent when the drafts were paid, and we fail to discover any ground on which the set-off can be properly allowed.

The order of the General Term should be reversed, and the report of the referee and its confirmation by the Special Term be set aside, and the account re-stated, with costs of this appeal in this court and the General Term.

All concur.

Order reversed.