[Civ. No. 2063.   Third Appellate District.—November 22, 1920.]

FRIEND & TERRY LUMBER COMPANY (a Corporation), Respondent, v. JAMES H. DEVINE, Appellant.

[1] APPEAL—JUDGMENT.— WAIVER OF FINDINGS — EVIDENCE. — Where findings are waived every legitimate conclusion which can be drawn from the evidence must be resolved on appeal in support of the judgment.

[2] HUSBAND AND WIFE—CONTRACTS OF WIFE—LIABILITY OF HUSBAND. Unless the wife is acting as her husband's agent, she has no authority to make any contract in his name, or to dispose of his property, save and except purchases for necessaries when not supplied by him.

[3] PRINCIPAL AND AGENT—DEBT OF AGENT—PAYMENT WITH MONEY OF PRINCIPAL.—A person who knowingly receives the money or

2.  Wife as agent for husband, notes, 98 Am. St. Rep. 627; Ann. Cas. 1913C, 879.

property of a principal from an agent in payment of the latter's debt does so at his peril, and if the agent acted without authority, the principal may recover.

[4] HUSBAND AND WIFE — PAYMENT OF LUMBER BILL — AGENCY OF WIFE.—Where a husband and wife made separate purchases of lumber and had separate accounts with the lumber company, and the husband permitted the wife to collect the rents of his separate property and pay his bills, and the wife wrongfully applied some of his funds in payment of her own lumber bill, which the lumber company credited to her account in good faith, he is not entitled to have the amount of such payment applied to his own account.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin, C. P. McLaughlin and S. R. Hart for Appellant.

Irving D. Gibson for Respondent.

PLUMMER, J., _pro tem._—Respondent recovered judgment against the appellant in the trial court for the sum of $421.45, on account of lumber sold and delivered by the respondent to the appellant.

By the statement of counsel for appellant at the opening of the case in the trial court it appeared that the only issue presented for determination was whether the appellant should have credit for the sum of $208.34 on account of lumber alleged to have been furnished by respondent to one J. E. Reeves, the son of appellant's wife by a former marriage, and charged to the account of appellant's wife.

It appears that the respondent sold and delivered lumber used in repairing a certain building owned by appellant, also lumber for the repair of a building belonging to Mrs. Devine, the wife of appellant, and also sold and delivered some lumber to Mr. Reeves, this latter lumber going over to a place called Broderick, the cost thereof being charged to the account of Mrs. Devine. Mr. and Mrs. Devine owned separate property, and also had separate accounts with the lumber company. Mrs. Devine, the appellant's wife, appears to have collected all rents, and otherwise

received money from appellant or his property, and paid all bills. It also appears that at the time of making payments the appellant's wife would designate the respective accounts to which the payments should be applied. It does not appear how much money was collected by Mrs. Devine, or whether any of the moneys used by her in making payments, either on her account or the account of her husband with the Lumber Company, came from her separate property. The transactions referred to continued over a considerable period of time. Monthly statements were rendered by the Lumber Company to the defendants, to which no objection appears to have been made until a short time before the institution of this action. The accuracy of plaintiff's ledger sheet, showing an indebtedness on the part of appellant to the respondent in the sum of $421.45, appears to be unquestioned. There is nothing in the record from which the inference can be drawn that the respondent had any knowledge of the source, or sources, from which the money came used by Mrs. Devine in making payments. The record is also silent as to whether the respondent had any knowledge of whether Mrs. Devine was authorized to direct the application that should be made of the respective payments. The money paid by Mrs. Devine was applied to the accounts as she directed, and her account, which at one time amounted to $367, was all paid and discharged, save and except the sum of $23.25, for which judgment was had against her.

[1] Findings were waived, and hence every legitimate conclusion which can be drawn from the evidence must be resolved in favor of the support of the judgment. The evidence of the witnesses Reeves and Mrs. Devine is so uncertain that no conclusion could really be drawn as to the value of the lumber delivered to Reeves at Broderick and charged to her account, but from the testimony of the witness Shepard, an officer of the plaintiff corporation, it would appear that the value of the lumber delivered to Reeves and charged to the account of Mrs. Devine was about the sum of $128.59. But whatever the value of the lumber delivered to Reeves and charged to the account of Mrs. Devine may have been, there is plenty of evidence if believed by the trial court, to show that Mrs. Devine ordered the amount thereof charged to her account. There

is also testimony to show that Mrs. Devine collected all the rents from whatever source they came, attended to all payments made to the lumber company, directed the application to be made of such payments; that statements of account were rendered from time to time by the Lumber Company to appellant, and also to Mrs. Devine, showing the status of their respective accounts. There is also sufficient testimony to lead the trial court to the conclusion that the appellant authorized his wife to make collections and attend to all payments, his own testimony being that he thought he had given his wife plenty of money to pay "any bill." There is no testimony, however, which shows that the appellant specifically directed the application of any payment to be applied to the account of Mrs. Devine. Such authorization, if any, could only be inferred from the course of the dealing of the parties herein, and the manner in which the business was transacted. The ledger sheet exhibiting the account of Mrs. Devine shows that she purchased lumber to the value of $367, of which sum only the value of the lumber sent to her son is disputed by her. At the time of the institution of suit all of this account had been paid except the sum of $23.25, as heretofore stated. The money for the payment of all of Mrs. Devine's account apparently came from the same sources, and that Mrs. Devine had authority to apply the money to the payment of her account, save and except the portion thereof representing the value of the lumber delivered to her son, appears not to have been questioned in the trial court. The accounts furnished the defendants show the amount of lumber purchased. The appellant entrusted the collection of rents and making of payments wholly to his wife, who directed their application.

It is now urged that the payments made by Mrs. Devine on her own account were unauthorized, and that the appellant is entitled to have the amount of such payments credited as an offset on the plaintiff's claim against him, upon which this suit is based.

Appellant relies for reversal on the following cases, to wit: *Baker* v. *Whitten*, 1 Okl. 160, [30 Pac. 491]; *Puget Sound Lumber Co.* v. *Krug*, 89 Cal. 243, [26 Pac. 902]; *National Fire Ins. Co.* v. *Wagley* (Tex. Civ.), 68 S. W. 419;

and *Nilson* v. *Sarment,* 153 Cal. 531, [126 Am. St. Rep. 91, 96 Pac. 315].

[2] The holding of these cases is substantially that unless the wife is acting as her husband's agent, she has no authority to make any contract in his name, or to dispose of his property, save and except purchases for necessaries when not supplied by him.

In the Whitten case, the wife had employed a physician to care for a man wounded by her son, the issue of a former marriage. The husband was held not liable.

In the lumber company case, lumber had been purchased by the husband which went into the repair of property belonging ' to the wife. While the same rule is announced in that case, the supreme court held that there was sufficient evidence upon which the lower court might have concluded that the husband was authorized to make the purchase.

In the Sarment case, the court held that the husband was not estopped to assert the community character of certain property by reason of any statement made by the wife.

To the same effect was the ruling in the Wagley case.

It is not sought, however, in this case to charge the husband with liability on account of contracts made by his wife. The authorities cited by appellant undoubtedly state the law, but the application of the principles involved is different in the questions now presented for our consideration. The evidence is sufficient to justify the trial court in the conclusion that the appellant owed the respondent the amount of the judgment rendered against him on his own account. This account was not created by any act of his wife. Had this been true, the cases cited would be decisive in appellant's favor. It is the alleged wrong application of money furnished the wife, bearing no earmarks of ownership, that is really in question.

In 21 Ruling Case Law, page 913, we find this answer to that question: [3] "A person who knowingly receives the money or property of a principal from an agent in payment of the latter's debt does so at his peril; and, if the agent acted without authority, the principal on proof of these facts is entitled to recover. Story states the rule as follows: 'A person dealing with a factor or broker is bound to know that by law a factor or broker,

although a general agent, is not clothed with authority to pledge, deposit, or transfer the property of his principal for his own debt; and, if he receives such a deposit or pledge, the title is invalid, and the property may be reclaimed by the principal. However, in order to make one liable by reason of participation in misuse of money for the principal by an agent, upon the ground that it was used to pay the private debt of the agent, it is necessary to show not only that the party sought to be charged was aware that the money belonged to the principal, but also that he was aware that the debt paid by it was in fact a private debt of the agent, or such a debt that payment thereof could not lawfully be made out of such money.' "

2. C. J., section 578, states the rule in this language: "Where, in violation of his duty, an agent, makes a payment or appropriation of his principal's money to a third person, the principal may recover of the third person the money so misapplied, unless the third person is a *bona fide* holder for value and without notice."

A number of cases are there cited to the effect that knowledge is necessary on the part of the third party in order to charge him with liability.

In *Perry* v. *Oerman,* 63 W. Va. 566, [129 Am. St. Rep. 1020, 15 L. R. A. (N. S.) 310, 60 S. E. 604], the court states the law in this manner: "To make one liable by reason of participation in misuse of money of the principal by an agent upon the ground that it was used to pay the private debt of the agent, it is necessary to show not only that the party sought to be charged was aware that the money belonged to the principal, but also that he was aware that the debt paid by it was in fact a private debt of the agent, or such a debt that payment thereof could not lawfully be made out of such money."

The supreme court of New York, in *Newhall* v. *Wyatt,* 139 N. Y. 452, [36 Am. St. Rep. 712, 34 N. E. 1045], holds substantially the same, and uses this language: "The payment of money to a creditor who receives it in discharge of an existing debt innocently and without knowledge, or means of knowledge, that the debtor had no rightful ownership in the funds received, is good and effectual, and does not subject the creditor to a recovery by the true owner of such funds."

In *Porter* v. *Roseman,* 165 Ind. 255, [112 Am. St. Rep. 222, 6 Ann. Cas. 718, 74 N. E. 1105], a contrary rule appears to have been adopted. It is there held that if an agent applies money of his principal to the payment of the agent's debt, the creditor receiving such money acquires no title thereto, though, when receiving it, he does not know it is not the money of his debtor.

An examination of the cases upon which this rule is based would lead to the conclusion that the circumstances surrounding the several cases were sufficient to put the creditor upon inquiry or notice.

In several of the cases having to do with the conversion of personal property which can be readily identified, general language has been used which would cover the misapplication of money; but where the distinction has been clearly drawn, the weight of authority supports the rule announced in Ruling Case Law, in Corpus Juris, and by the supreme court of the state of New York.

[4] The testimony of the appellant clearly shows that Mrs. Devine was acting with his knowledge and permission in collecting the rents and paying the bills, and is sufficient to show that the wife was acting as appellant's agent in this capacity, and whether there is sufficient evidence to justify a conclusion by the trial court that Mrs. Devine was authorized to make the specific application of the moneys collected by her to the payment of her own account, which included the items for lumber delivered to her son, is immaterial. There being no evidence to show that the respondent acted in other than a *bona fide* manner when it received payments and applied the same to the account of Mrs. Devine as directed by her, we must, under the authority of the cases heretofore cited, hold that the appellant is not entitled to have such payments now credited on his account with respondent.

The judgment of the trial court is hereby affirmed.

Burnett, J., and Prewett, P. J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 20, 1921.

All the Justices concurred.