RICHARD D. WHITING, as Surviving Executor of WILLIAM R. DENHAM, Deceased, Respondent, *v.* HUDSON TRUST COMPANY et al., Appellants, Impleaded with Another.

Executors and trustees — banks and banking — deposit of moneys of trust in individual name of trustee not a conversion in September, 1915 — when trust company not liable for crediting checks to order of depositor " as trustee " and " as executor " to his account marked " special " where depositor thereafter wrongfully converts proceeds — effect where check deposited was certified — payment by depositor of money so held as executor and trustee of one estate to himself as representative of another to make good deficiency therein — duty to restore devolves upon his death upon Supreme Court and its agent — payment of stolen money to legatees to whom distribution was due — judgment may still be rendered against trust estate enforcible against assets that remain — equity will not clothe legatees with title still retained by trustee.

1. A trust company, which opened an account in September, 1915, in the name of one who presented for deposit a check drawn by himself " as attorney " to the order of himself " as trustee," and placed the description " special " rather than " trustee " in the title of the account and thereafter received and credited to said special account checks drawn to the order of its depositor " as executor," is not liable, where the depositor subsequently wrongfully converts the moneys so deposited, upon the theory that it made itself a participant in the wrong by its designation of the account as " special." The fact the check first deposited described the payee as " trustee " though suggestive of a trust was not conclusive. Its depositor was the payee of the check with power to collect it and his power was neither increased nor diminished by the form of the deposit. The checks drawn to his

order as executor were subject to the same rule. (*Bischoff* v. *York-ville Bank*, 218 N. Y. 106, followed.)

2. A contention that the deposit, if not wrongful because of the description of the payee of the first check is to be deemed wrongful, none the less, because of the description of the maker, cannot be sustained where the payee before delivering the check to the defendant had caused it to be certified. The legal result was the same as if he had received the cash over the counter. Between the drawee bank and its depositor the check had been paid. What the defendant turned into money was not the obligation of the maker, but that of the drawee. In such circumstances, the act of collection for the account of the depositor was neither a conversion nor anything that had a proximate relation in aiding a conversion. (*Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Moch Co.* v. *Security Bank of New York*, 176 App. Div. 842; affd., 225 N. Y. 723, distinguished.)

3. Where, however, the depositor took the money which he so held as executor and trustee of one estate and paid it to himself as representative of another to make good a deficiency therein, he had actual notice in the act of transfer and acceptance that the money was stolen and ought not to be received. His acceptance with guilty knowledge charged him as trustee with a duty to restore which is not ended by his death but devolves upon the Supreme Court, the successor to the trust, and upon its agent by whom the trust is to be executed.

4. The fact that the stolen money after the receipt by the trustee was paid out to legatees, to whom distribution was due under a judgment of the court, thus rendering it impossible to identify or earmark the money in the hands of the trustee to-day, is a circumstance which affects the nature and scope of the relief, but does not involve as a consequence a refusal to give relief at all. The equitable lien is destroyed by the dissipation of the fund but there may still be a personal judgment enforcible against the trust estate, to the extent of the unjust enrichment, out of the assets that remain.

5. An argument that the legatees when they received the stolen money on account of a valid debt became holders for value, and acting without guilty knowledge may retain in good conscience the benefits received, is inapplicable in this action against the successor trustee, in which the plaintiff is not seeking to hold the legatees accountable for anything. Equity will not affirmatively intervene to clothe the legatees with a title still retained by the trustee.

*Whiting* v. *Hudson Trust Co.*, 202 App. Div. 375, modified.

(Argued November 27, 1922; decided January 9, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 2, 1922, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Victor E. Whitlock* for Hudson Trust Company, appellant. The $7,000 check, being certified, did not put the trust company on notice that the funds represented by the check belonged to Denham. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *H. C. R. R. Co.* v. *Knickerbocker Trust Co.,* 198 N. Y. 422; *Meuer* v. *Phœnix Nat. Bank,* 94 App. Div. 331; *First Nat. Bank of Jersey City* v. *Leach,* 52 N. Y. 350.) There was no actual knowledge or notice in the Hudson Trust Company at the time when it received the $7,000 check for deposit to the account " John C. R. Eckerson, Special " (from circumstances which reasonably supported that sole inference), that a misappropriation was intended. The act of a fiduciary in depositing trust funds in his individual account does not constitute a diversion or render the bank which has knowledge of such a deposit a participant in a diversion. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106.) The word " trustee " after the depositor's name upon a check offered for deposit did not put the bank on notice that the funds represented by the check were trust funds. (*Manhattan Savings Inst.* v. *N. Y. Nat. Ex. Bank,* 170 N. Y. 58; *Fidelity Trust Co.* v. *Queens Co. Trust Co.,* 174 App. Div. 165; 226 N. Y. 225; *Chambers* v. *Webster,* 69 App. Div. 546; *Town of Eastchester* v. *Mt. Vernon Trust Co.,* 173 App. Div. 482; *Laubach* v. *Leibert,* 87 Penn. St. 55; *Scudder* v. *Trenton S. F. Society,* 58 N. J. Eq. 154; *Metcalf* v. *Williams,* 104 U. S. 93; *G. L. & P. J. Co.* v. *N. Y. & G. L. Co.,* 134 N. Y. 435; *Mills* v. *Nassau Bank,* 102 N. Y. Supp. 1119; *Ward* v. *City Trust Co.,* 192 N. Y. 61.) There was no obligation on the part of the trust company to prevent Eckerson checking out the special

account to himself or to third parties. (*Bischoff* v. *York-ville Bank*, 218 N. Y. 106; *Taylor* v. *Astor Nat. Bank*, 105 Misc. Rep. 386; *Batchelder* v. *Central Nat. Bank*, 188 Mass. 25; *Safe Deposit Co.* v. *Diamond Nat. Bank*, 194 Penn. St. 334; *Kendall* v. *Fidelity Trust Co.*, 119 N. E. Rep. 861; *Allen* v. *Puritan T. Co.*, 211 Mass. 409; *Allen* v. *Fourth Nat. Bank*, 224 Mass. 239; *U. S. Fidelity & T. Co.* v. *Home Bank for Savings*, 88 S. E. Rep. 109.) The trust company was justified in the inference that the " executor " checks deposited in the " special account " belonged to the Snyder estate. (*Mittnacht* v. *Bache*, 16 App. Div. 426.)

*Abram J. Rose, Alfred C. Petté* and *Macintosh Kellogg* for Howard C. Taylor as agent, etc., appellant. The payments out of the account " Estate of Joseph H. Snyder," were paid by Eckerson and received by the beneficiaries under the Snyder will and the defendant Taylor, as agent, on account of an adjudged indebtedness due from him to them by the interlocutory judgment settling and approving his account, and in the absence of notice or knowledge that trust funds belonging to the Denham estate had been used by Eckerson in making such payments, they became *bona fide* purchasers thereof for a valuable consideration within the rule that trust funds diverted from their proper purpose cannot be followed into the hands of a *bona fide* holder for value. (*Riggs* v. *Cragg*, 89 N. Y. 479; *Fisher* v. *Banta*, 66 N. Y. 468; *Van Camp* v. *Searle*, 147 N. Y. 150; *Cooke* v. *United States*, 91 U. S. 389; *State Nat. Bank* v. *United States*, 114 U. S. 401; *Hatch* v. *Fourth Nat. Bank*, 147 N. Y. 184; *Alabama Nat. Bank* v. *Rivers*, 116 Ala. 1; *Olmstead* v. *Winsted Bank*, 32 Conn. 278; *Robinson* v. *Bank of Darien*, 18 Ga. 65; *Merchants Loan & Trust Co.* v. *Lamson*, 90 Ill. App. 18; *Worcester County Bank* v. *Dorchester & M. Bank*, 10 Cush. 488.)

*Gilbert D. Lamb* for respondent. The Snyder estate having received the $29,195 without consideration as to

the Denham estate was chargeable with notice of the diversion because in receiving it and disbursing it for the use of the Snyder estate Eckerson was in legal aspect the Snyder estate. As Eckerson was the sole trustee it is simply the case of a single individual viewed in two aspects, and his knowledge in one aspect necessarily extends to the other. (*Atlantic Mills* v. *Indian Orchard Mills*, 147 Mass. 268; *Loring* v. *Brodie*, 139 Mass. 453; *Newall* v. *Hadley*, 206 Mass. 335; *Holden* v. *New York Bank*, 72 N. Y. 286.) The Snyder estate having received the diverted Denham fund, with notice of such diversion, was liable to the Denham estate either on the theory of original obligation to pay for a benefit to the extent of the money received, or on the theory that the Denham estate, being subrogated to the rights of the assignees of beneficiaries, judgment creditors of the Snyder estate, whose lien claims have been avowedly paid by the Snyder estate with Denham money and whose claims to the extent of payment are presumed in equity to have been assigned to the Denham estate, and the latter is entitled to reimbursement from the Snyder estate to the amount of the diversion to it. (*United States* v. *State Bank*, 96 U. S. 20; *Newton* v. *Porter*, 69 N. Y. 133; *Tugman* v. *S. S. Co.*, 76 N. Y. 207; *Bank* v. *Bank*, 156 N. Y. 459; *Reynolds* v. *Ins. Co.*, 28 App. Div. 591; *American Sugar Co.* v. *Fancher*, 145 N. Y. 552; *Reynolds* v. *Bank*, 55 App. Div. 1; *Squire* v. *Ordman*, 194 N. Y. 394; *Parks* v. *Trust Co.*, 137 App. Div. 719; *Newall* v. *Hadley*, 206 Mass. 335.) Disbursement of the Denham moneys by the Snyder estate through and by its trustee, Eckerson, acting as trustee of the Snyder estate to certain judgment creditors, assignees of beneficiaries of the Snyder estate and others, under the Snyder will, pursuant to such judgment obtained in April, 1916, did not discharge the Snyder estate from liability to plaintiff. (*Squire* v. *Ordman*, 194 N. Y. 394; *Pennington* v. *Smith*, 69 Fed. Rep. 188; *Adams Co.* v. *Nat. Bank*, 9 N. Y. Supp. 75; *Hamlin* v. *Smith*, 72 App.

Div. 601; *Nat. Surety Co.* v. *Manhattan Mortgage Co.,* 185 App. Div. 733.) The Hudson Trust Company was chargeable with notice that the moneys deposited in the special account were Denham trust moneys belonging to decedent and his estate, and the purpose of Eckerson to apply the same to his personal use and thus misappropriate them. (*Ward* v. *City Trust Co.,* 192 N. Y. 62; *Rochester* v. *Paviour,* 130 N. Y. 261; *Porges* v. *U. S. M. & T. Co.,* 203 N. Y. 181; *Marshall* v. *De Cordova,* 26 App. Div. 615; *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Duncan* v. *Jaudon,* 15 Wall. 165; *Northrup* v. *Hale,* 73 Me. 66; *Allen* v. *Puritan Furniture Co.,* 211 Mass. 409; *Fidelity Co.* v. *Queens Co.,* 226 N. Y. 225; *First Nat. Bank* v. *Nat. Bank,* 156 N. Y. 459; *Gerard* v. *McCormick,* 130 N. Y. 261; *Ward* v. *City Trust Co.,* 192 N. Y. 161.) Notice to the Hudson Trust Company of Eckerson's dishonest purpose in respect to the special account is imputable to the trust company as a matter of law because the trust company's participation in the deposit of the $7,000 check in the special account constituted a technical conversion thereof, or at least the initial step of such conversion, and in consequence thereof said trust company occupied the status of a wrongdoer with all presumptions against it. (*Porges* v. *U. S. M. & T. Co.,* 203 N. Y. 181; *Craighead* v. *Peterson,* 72 N. Y. 279; *Tesem* v. *M. L. Ins. Co.,* 164 App. Div. 507.) Assuming that the Hudson Trust Company was effected with notice of the dishonest purpose of Eckerson in opening the special account to misappropriate the moneys subsequently deposited therein, said company was properly held responsible. (*Bischoff* v. *Yorkville Bank,* 170 App. Div. 679; 218 N. Y. 106; *Rochester* v. *Paviour,* 164 N. Y. 281; *F. & D. Co.* v. *Queens Co.,* 226 N. Y. 225; *Matter of Early,* 112 Misc. Rep. 54.)

CARDOZO, J. The action is in equity, brought by a surviving executor to follow and reclaim trust moneys converted by a deceased fiduciary.

In September, 1915, John C. R. Eckerson had an account in his own name with the defendant, the Hudson Trust Company. He told Mr. Purdy, one of the defendant's officers, that he wished to open a second account, which for his own bookkeeping reasons was to be kept separate from the first. This account, it was agreed, would be designated " special." A day or so later he opened the new account with a deposit of $7,000. He brought with him a certified check for that amount upon the United States Mortgage and Trust Company. The check was signed " Wm. R. Denham by John C. R. Eckerson, att'y. in fact," and was drawn to the order of " John C. R. Eckerson, Trustee." Some comment was made by Mr. Purdy upon the use of the word " trustee " instead of the word " special." Mr. Eckerson said that he supposed the words to be interchangeable, that in fact there was no trust, and that the deposit was his own. Upon his indorsement of the check, an account described as " special " was opened in the defendant's books. At that time the standing of the depositor with banks and in the business community generally was high. His reputation went far to disarm suspicion of wrongdoing.

William R. Denham, the drawer of the check through Eckerson as agent, had signed a power of attorney in April, 1915. The power was a broad one, conferring authority on the agent for and in the name of the principal to make and indorse negotiable paper; to borrow money; to keep one or more banking accounts; and to draw against the accounts and make deposits therein. Mr. Denham was ill when the special account was opened, and died a few days later, September 21, 1915. His will named two executors, Eckerson and the plaintiff. Letters were issued to both, but the plaintiff took little part in the administration of the estate. Securities which had belonged to Mr. Denham were kept in a box of the United States Safe Deposit Company. Eckerson removed them, brought them from time to time to McCurdy,

Henderson & Co., stockbrokers, and caused them to be sold. Checks of McCurdy, Henderson & Co., aggregating $18,817.36, drawn to the order of J. C. R. Eckerson and J. C. R. Eckerson, " special," were deposited in the special account in April, 1916. They were for the proceeds of sales. Checks of the same firm, aggregating $22,468.54, drawn to the order of J. C. R. Eckerson, " executor," were deposited in the same account in May, 1916. They were for the proceeds of other sales.

Eckerson at these times was the executor and trustee of another estate, that of Joseph H. Snyder. He kept an account as the representative of that estate with the Hudson Trust Company. A judgment of the Supreme Court made in April, 1916, in an action for an accounting directed distribution of $188,089.35, adjudged to constitute principal, and $52,999.81, income. The assets held by the trustee were not sufficient to permit the payments to be made. His embezzlements had brought about a deficit of $166.166.38. In this emergency, he made good his thefts from one estate, or part of them, by stealing from the other. He drew three checks aggregating $29,195 upon the " special " account, which contained the proceeds of the securities belonging to the estate of Denham. The checks, dated in May, 1916, were to the order of the estate of Joseph H. Snyder, and were placed to the credit of Eckerson, as executor. He distributed the moneys thus obtained among the Snyder legatees.

Eckerson died in October, 1916, and his thefts were then discovered. The surviving executor of the Denham estate now looks for reimbursement both to the Hudson Trust Company and to the estate of Joseph H. Snyder, represented by the defendant Taylor, who on the death of Eckerson was appointed the agent of the Supreme Court to execute the trusts. The Appellate Division has held that in accepting the check for $7,000, which opened the account, and in accepting the three checks

26

for $22,468.54, drawn by McCurdy, Henderson & Co. to the order of " Eckerson, executor," the Hudson Trust Company had constructive notice through the form of the checks that the deposit was a breach of trust. Judgment has gone against the trust company for the total of these items, less, however, the balance remaining in the special account on the death of the depositor. The result is to charge the trust company with liability for $18,448.87 principal, and interest $6,008.88, in all $24,457.75. The Appellate Division has held that the defendant Taylor, as agent or trustee, must refund $29,195, principal, and $9,340.40, interest, in all $38,535.40, moneys withdrawn from the estate of Denham and turned over without right to the trustee of the estate of Snyder. Both the Hudson Trust Company and Taylor appeal.

(1) The liability of the trust company will be the first subject of inquiry.

We begin with a consideration of the check for $7,000, which opened the account. The check was drawn, as we have seen, by Eckerson, attorney, to the order of Eckerson, trustee. The argument is that the trust company made itself a participant in the wrong when it placed the description " special " rather than " trustee " in the title of the account. Rights and wrongs are not built upon distinctions so inconsequent. If the word " trustee " had been added, Eckerson would have been equally free to draw the money out and use it as he pleased (*Gray* v. *Johnston*, L. R. 3 Eng. & Ir. App. 1). The style of the account, the term of description attached to it, had no bearing on the result, no relation to the consequences. A different question would be here if the trust company had received the check for its own use, as, for example, in payment of a debt (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 112; *Ward* v. *City Trust Co.*, 192 N. Y. 61). What it did was to accept the check for the use of the depositor upon an agreement that the

proceeds should be subject to his order. When the order was given and the money disbursed, the situation was the same as if cash had been delivered for safekeeping and afterwards returned. In such a situation, the defendant is to be held liable, if at all, only upon a showing that by the form of the account it has facilitated a conversion and made itself, in so doing, a party to a tort (*Allen* v. *Puritan Trust Co.*, 211 Mass. 409, 422; *Squire* v. *Ordemann*, 194 N. Y. 394). But nothing that was done by the defendant did facilitate a conversion. Eckerson was the payee of the check with power to collect it. His power was neither increased nor diminished by the form of the deposit. He was the owner of a chose in action whether subject to a trust or free from one. Under the law as it then stood, a trustee did not convert the moneys of the trust by the mere act of depositing them in a bank in his individual name (*Bischoff* v. *Yorkville Bank, supra; Sagoney* v. *Mackey*, 225 N. Y. 594, 599; *Wickenheiser* v. *Colonial Bank*, 168 App. Div. 329, 333; 224 N. Y. 650). Whether any change in this respect has been brought about by later statutes (Code Civ. Pro. § 2664a, as amd. by L. 1916, ch. 588, in effect Sept. 1, 1916; Surrogate's Court Act, § 231), we need not now determine. The defendant did no more to facilitate the conversion than it would have done if it had accepted a deposit of cash with notice that there was a question whether the cash belonged to the depositor in his own right or as fiduciary. The fact that the check described the payee as trustee, though suggestive of a trust, was not conclusive (*Manhattan Savings Inst.* v. *N. Y. Nat. Exch. Bank*, 170 N. Y. 58, 67; *Matter of Totten*, 179 N. Y. 112). Whether a trust did in truth exist, the defendant could not be sure. What it could be sure of was that the style of the account would neither change the quality of ownership nor work injury to any one.

The plaintiff makes a point that the deposit, if not wrongful because of the description of the payee, is to be

deemed wrongful, none the less, because of the description of the maker. The payee was described as trustee, the maker as an agent. One answer to this point suffices, though others may be available. The payee of the check, before delivering it to the defendant, had caused it to be certified. The legal result was the same as if he had received the cash over the counter (*Freund* v. *Imp. & T. Nat. Bank,* 76 N. Y. 352; *Carnegie Trust Co.* v. *First N. Bank of N. Y.,* 213 N. Y. 301; *Meuer* v. *Phenix Nat. Bank,* 94 App. Div. 331; 183 N. Y. 511). Between the drawee bank and its depositor, the check had been paid (Neg. Inst. Law, § 324; Consol. Laws, ch. 38; *Gallo* v. *Brooklyn Savings Bank,* 199 N. Y. 222). The payee was the owner of a chose in action, the drawee's promise to pay, just as much as if he were the holder of a cashier's draft (*Goshen Nat. Bank* v. *State of N. Y.,* 141 N. Y., 379; *Justh* v. *Nat. Bank of the Commonwealth,* 56 N. Y. 478, 480). What the defendant turned into money was not the obligation of the maker, but that of the drawee. In such circumstances, the act of collection for the account of the depositor was neither a conversion nor anything that had a proximate relation in aiding a conversion. The drawee would have paid in discharge of its own promise if Eckerson rather than the defendant had come to it with the check and demanded payment of the money. If this had been done, and the money then handed to the defendant, there would hardly be a claim that a tort would have resulted, though the money was received with knowledge of its origin. The intervention of a cashier's draft or its equivalent changes the transaction in form, but not in substance (*Goshen Nat. Bank* v. *State of N. Y., supra*).

Reaching this conclusion, we are not required to determine to what extent the defendant would be protected by our ruling in *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.* (198 N. Y. 422) though the check had been uncertified. There may be technical inaccuracy in describing the drawee bank as the depositor's agent for

the purpose of making representations as to the fiduciary's powers (*Havana Central R. R. Co.* v. *Knickerbocker Trust Co., supra,* at p. 430). The relation is one, not of agency, but of debtor and creditor. The bank is chargeable, however, with knowledge of the signature of the drawer, and of his authority to draw (*Nat. Park Bank of N. Y.* v. *Ninth Nat. Bank of N. Y.,* 46 N. Y. 77; cf. Neg. Inst. Law, § 112; Consol. Laws, ch. 38). Knowledge of its action in making payment of the paper may, therefore, take the place, within reasonable limits, of other investigation and inquiry by the collector of the proceeds (*Havana Central R. R. Co.* v. *Knickerbocker Trust Co., supra; Allen* v. *Puritan Trust Co., supra,* at p. 423). Where the line is to be drawn, if the instrument is uncertified at the time of the deposit, we need not now inquire.

In thus disposing of the controversy, we do not forget such cases as *Wagner Trading Co.* v. *Battery Park Nat. Bank* (228 N. Y. 37) and *Moch Co.* v. *Security Bank of N. Y.* (176 App. Div. 842; 225 N. Y. 723). There, and in others like them, an officer of a corporation indorsed to himself checks received by the corporation and drawn to its order as payee. We held that such an indorsement was not within the power of the agent (cf. *Bank of N. Y. N. B. Assn.* v. *Am. D. & T. Co.,* 143 N. Y. 559, 563; *Manh. L. Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.,* 139 N. Y. 146, 151; *Ward* v. *City Trust Co. of N. Y.,* 192 N. Y. 61, 71; *Porges* v. *U. S. Mortgage & Trust Co.,* 203 N. Y. 181, 190), and that the consequences were those that follow where an indorsement has been forged (*Standard S. S. Co.* v. *Corn Ex. Bank,* 220 N. Y. 478, 481). The bank receiving the deposits, collected paper for the account of its depositor, though the depositor had neither title to the paper nor power, in the existing situation, to confer title on another. In a very substantial sense it had facilitated the conversion, for the drawee bank, which would probably have refused payment to the delinquent agent coming in person and asking pay-

ment over the counter, might be expected to confide in the indorsement and warranty of a bank collecting for his account. This is so whether we view the latter bank as agent (*Nat. Park Bank of N. Y.* v. *Seaboard Bank,* 114 N. Y. 28) or as purchaser (*Met. Nat. Bank of N. Y.* v. *Loyd,* 90 N. Y. 530). The cases imposing liability in such circumstances lay down, however, a strict and at times a harsh rule, and are not to be extended. They do not reach a case where the instrument has been collected according to its tenor for the account of the very person who is there named as the payee. The transactions of banking in a great financial center are not to be clogged, and their pace slackened, by over-burdensome restrictions.

We pass to the checks of McCurdy, Henderson & Co., amounting to $22,468.54, which were drawn to the order of Eckerson, " executor." Under our ruling in *Bischoff* v. *Yorkville Bank* (*supra*), the defendant did not become a party to a wrong in crediting these checks to its depositor's personal account. We are told that the *Bischoff* case is to be distinguished upon the ground that there the account was general and that here it is special. The distinction is unreal. If we were to give it any effect at all, it would count in favor of the defendant's action rather than against, since the designation of the account as special suggests a separation of the items from those that are strictly personal. But in truth the label is unimportant. The executor was owner (*Matter of Heinze,* 224 N. Y. 1, 8). Whether he deposited in his own name or with the addition of the name of the estate, the title was unchanged (*Bischoff* v. *Yorkville Bank; Sagoney* v. *Mackey, supra*).

(2) Our final subject of inquiry is the liability of the defendant Taylor as agent or representative of the Supreme Court in the execution of the trusts created by the will of Snyder.

When Eckerson took the money which he held as executor of one estate, and paid it to himself as the

representative of another, he had notice in the act of transfer and acceptance that the money was stolen and ought not to be received. The notice was actual. It was not, as in *Henry* v. *Allen* (151 N. Y. 1) and like cases, imputed or constructive. Eckerson, trustee under the Snyder will, was not an agent identified with some one else, a principal, as the result of legal fiction. He was the principal himself. It is only a form of words when we speak of him as the representative of an " estate." The " estate " had no separate existence. It was not a legal person. The only person was the trustee. His acceptance with guilty knowledge charged him as trustee with a duty to restore (*Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268; *U. S.* v. *State Bank*, 96 U. S. 30; *Newell* v. *Hadley*, 206 Mass. 335, also dissenting opinion in same case at p. 358; cf. Weston, Money Stolen from One Trust for Another, 25 Harv. Law Rev. 602 at p. 610). The trustee of an express trust under our statute (Real Prop. Law, § 100; Consol. Laws, ch. 50) has the whole title and estate. The beneficiary has a chose in action, the right to enforce in equity the performance of the trust (*Schenck* v. *Barnes*, 156 N. Y. 316, 321). Money accepted by a trustee with knowledge that its acceptance is a theft never becomes of right a part of the trust estate. The beneficiary will not be heard in equity to insist that it shall be so regarded. The trustee's duty to restore is not ended by his death. It devolves upon the Supreme Court, the successor to the trust (Real Prop. Law, § 111; Consol. Laws, ch. 50; Pers. Prop. Law, § 20; Consol. Laws, ch. 41), and now rests upon the agent by whom the trust is to be executed.

We are reminded that the stolen money after the receipt by the trustee was paid out to legatees, to whom distribution was due under a judgment of the court. The distribution may render it impossible to identify or earmark the money in the hands of the trustee to-day. The impossibility affects the nature and scope of the relief.

It does not involve as a consequence a refusal to give relief at all. The equitable lien is destroyed by the dissipation of the fund (*Falk* v. *Hoffman*, 233 N. Y. 199; *Roca* v. *Byrne*, 145 N. Y. 182; *Schuyler* v. *Littlefield*, 232 U. S. 707). There may still be a personal judgment enforcible against the trust estate, to the extent of the unjust enrichment, out of the assets that remain (*Lightfoot* v. *Davis*, 198 N. Y. 261, 272, 273). A different question is presented where the attempt is, not merely to establish a debt, but to prefer one creditor over others (*Lightfoot* v. *Davis*, *supra*, distinguishing *Matter of Cavin* v. *Gleason*, 105 N. Y. 256, and *Matter of Hicks*, 170 N. Y. 195). That is not the situation here. If a trustee has two bank accounts and stolen moneys are paid into the first, the beneficiaries are not prejudiced because the trustee in making restitution draws his check upon the second. The unjust enrichment is the same whether the increment is left in one compartment or another. We see no reason why judgment, if kept within these limits, may not run against the wrongdoer as trustee as well as individually. There is little analogy between the situation before us here and cases where the attempt is made to charge a trustee in his representative capacity for goods bought and used for the benefit of the trust. At such times the primary remedy is against the trustee individually if the seller has chosen to make the sale upon his credit (*O'Brien* v. *Jackson*, 167 N. Y. 31). Even then a a secondary remedy may exist by subrogation to the right of the trustee to be indemnified for his expenses out of the assets of the trust (*Willis* v. *Sharp*, 113 N. Y. 586, 591; *Hewitt* v. *Phelps*, 105 U. S. 393, 400; Stone, Liability of Trust Assets for the Contracts and Torts of the Trustee, 22 Col. Law Rev. 527; Scott, Liabilities in the Administration of Trusts, 28 Harv. Law Rev. 725, 735). There are cases which hold that this remedy will fail to the extent that the trustee as between himself and his beneficiaries is in arrears in his accounts (*Matter of Johnson*,

L. R. 15 Ch. Div. 548; *Matter of Evans*, L. R. 34 Ch. Div.
597; Stone, *supra*, p. 528; but cf. *Wylly* v. *Collins & Co.*,
9 ·Ga. 223). In such circumstances, unjust enrichment,
it is thought, does not result, since the seller has himself
to blame if he has sold upon the personal credit of the
buyer. A larger security might have been attained by
stipulating in advance for a charge or lien upon the
fund (*Jessup* v. *Smith*, 223 N. Y. 203). How far the
right of recourse in such conditions is affected by the
state of the accounts between trustee and beneficiaries, we
need not now inquire. We are dealing in the case at hand
with a very different situation. The defendant's enrich-
ment is a direct and immediate, not an indirect or collateral,
consequence of the act of the trustee. It is an enrichment
independent of the volition of the defrauded plaintiff or of
those for whom he acts. The fruits of the tort are profits
in the coffers of the estate. We cannot characterize enrich-
ment so procured as other than unjust (Stone, *supra*, at pp.
528, 538, 539, 543; Scott, *supra*, at p. 741). The trust is
still augmented by assets unconscionably retained.

It is argued that the legatees when they received the
stolen money on account of a valid debt became holders
for value, and acting without guilty knowledge may retain
in good conscience the benefits received. Many cases
are cited in support of this conclusion (*Stephens* v. *Bd. of
Education, Brooklyn*, 79 N. Y. 183; *Ball* v. *Shepard*, 202
N. Y. 247; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220
N. Y. 137; *Newhall* v. *Wyatt*, 139 N. Y. 452; *Holly* v. *D.
& F. Missionary Society*, 92 Fed. Rep. 745; 180 U. S. 284;
cf. *Edgar* v. *Plomley*, 1900 A. C. 431). These cases might
be applicable if the plaintiff were suing a legatee, who,
by force of the payment so made, would hold the legal
title. They do not touch a case where he is suing the
trustee. The plaintiff is not holding the legatees account-
able for anything. He does not attempt to follow the
money into their hands on any theory of constructive
notice of the fraud of the trustee. What they have,

they may retain, though it prove to be far in excess of what is left in the estate. It is one thing to hold that equity will divest a legal title acquired by legatees without notice of defects. It is another thing to hold that equity will affirmatively intervene to clothe them with a title still retained by the trustee. The fact that the present trustee is a successor is unimportant. The transaction is guilty or innocent according to the presence or absence of notice at the time when payment was accepted. A legatee, if guilty, would charge his executor with liability though the executor were innocent. A trustee, if guilty, charges his successor, who assumes the trust *cum onere*. Nothing to the contrary was held in *Case* v. *James* (29 Beav. 512; affd., 3 DeG., F. & J. 256); *Thorndike* v. *Hunt* (3 DeG. & J. 563), and *Taylor* v. *Blakelock* (32 Ch. Div. 560). There the money did not reach the trust at all till it was paid to a new trustee who had no knowledge of its origin. Here the taint attached at the moment of acceptance.

It is argued that the effect of the judgment against the trustee under the Snyder will is to make the remaindermen suffer to a greater extent than the beneficiary of the trust for life or her personal representatives. Equity requires, it is said, that the burden of Eckerson's thefts be distributed proportionately between the life interest and the remainders. This, the brief tells us, has not been done. The life beneficiary or her estate has been paid in full; the judgment must be satisfied, it is said, out of assets that are held for the benefit of the remaindermen.

The point, if it is in the record at all, is not there with the clearness essential to make it the basis of our judgment. We do not know the terms of the will. There is no copy of it in the findings or even in the testimony. Possibly the *cestui que trust* for life had equities superior to those of the remaindermen. We do not even know whether the money that was paid to her was part of the stolen money, or was derived from other sources. A

deficit existed, but the estate had not been looted altogether, and its own assets were more than adequate to pay the *cestui que trust* in full. The question is not before us whether if she has in fact been overpaid, a remedy against her or her estate is available hereafter at the suit of the remaindermen for a readjustment of the burden.

The judgment against the Hudson Trust Company, both at the Appellate Division and at the Special Term, should be reversed, except as to the conceded balance of $12,064.44, and the complaint dismissed except as to said balance, with costs in the Appellate Division and in this court. The judgment against the defendant Taylor as the agent of the court to execute the Snyder trusts should be affirmed with costs.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.