THE GERMANTOWN NATIONAL BANK and Another, as Receiver of the GERMANTOWN NATIONAL BANK, Appellants, *v.* THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., OF LONDON, ENGLAND, and Another, Respondents.

Third Department, March 22, 1933.

*Coffin, Coffin & Inman* [*Samuel B. Coffin* of counsel], for the appellants.

*Charles B. Sullivan* [*Bertrand L. Pettigrew* of counsel], for the respondent The Employers' Liability Assurance Corporation, Ltd., of London, England.

*Frank B. Holsapple* [*Bertrand L. Pettigrew* of counsel], for the respondent County of Columbia.

CRAPSER, J.   Clyde H. De Witt was county treasurer of Columbia county prior to December 31, 1930.   The defendant assurance corporation was surety upon his bond for $125,000 given to the county of Columbia to secure the faithful performance of his duties.   The plaintiff bank, of which De Witt was vice-president and director, was used by him as depository for the county funds. During the years 1928, 1929 and 1930 De Witt embezzled county funds to the extent of $87,000.   The county was reimbursed by the surety upon the bond paying to the county the sum of $22,805.22 and by the plaintiff bank paying checks for legitimate, duly audited claims against the county to the amount of $64,195.88, which payments caused an overdraft in the general fund in plaintiff bank in the above amount.

The plaintiff begins this action to recover the amount of the overdraft amounting to $64,195.88 and claims it is subrogated

to the rights of the county under the bond. The defendant surety company interposes the defense that the plaintiff conspired and participated with the county treasurer to divert the $87,000, and sets up a counterclaim that the surety is subrogated to the rights of the county to the amount paid by it, to wit, $22,805.22, for which amount it has recovered judgment against the plaintiffs and from which judgment appeal in this action is taken.

The general rule is that a bank is not responsible for the diversion of trust funds by an agent or trustee unless it participates in the diversion. " Its participation in a diversion of them would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in a diversion in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it." (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 112; *Clarke* v. *Public National Bank & Trust Co.*, 259 id. 285.)

Of the $87,000 diverted from the general fund of the county, $46,398.01 represented amounts withdrawn from the general fund of the county and deposited in De Witt's personal account in the Germantown National Bank; $4,000 represented checks on the general fund cashed by De Witt at the Germantown National Bank, and $36,601.99 were items diverted from the county's general fund account and deposited to De Witt's personal account in the Hudson River Trust Company.

The first item of money deposited in the Hudson River Trust Company to De Witt's personal account was $3,601.99 and was drawn from the general fund in the Germantown National Bank by a check signed by De Witt as county treasurer and for which he received a cashier's check of the Germantown National Bank to himself, which he deposited in the Hudson River Trust Company.

There was a large amount of direct and indorsed loans in the plaintiff bank of the Pittsfield Lime and Stone Company. De Witt and other persons connected with the plaintiff bank were interested in the Pittsfield Lime and Stone Company. De Witt was a large stockholder in the company and the company was in financial trouble and many of its notes were overdue. The lime company owed the Manufacturers Trust Company of New York about $60,000, secured by its notes; as collateral for such notes were deposited stocks and bonds of the lime company amounting to over $250,000 face value. The claim was in the adjustment department of the trust company, which had been actively endeavoring to liquidate payment. The plaintiff bank also held a large amount of notes of the lime company which were past due and which were being questioned by the bank examiners and on which the Germantown bank was being pressed by the bank examiners.

On March 1, 1928, De Witt, as vice-president of the Germantown National Bank, transferred from the reserve account of said bank in the Federal Reserve Bank to the credit of the Manufacturers Trust Company $35,000. This was done late in the afternoon by the cashier of the plaintiff bank by telephone arranging with the officers of the Federal Reserve to admit De Witt. This transfer of credit to the Manufacturers Trust Company reduced the legal reserve of the Germantown bank in the Federal Reserve Bank and De Witt received from the Manufacturers Trust Company all the obligations held by it against the lime company, including the bonds pledged as collateral security.

The Germantown bank, upon receiving notice from the Federal Reserve Bank that $35,000 of its reserve fund had been transferred to the Manufacturers Trust Company by De Witt, entered a transfer in its books by crediting the Federal Reserve Bank with $35,000 and by debit entry in its books " Account of De Witt " $35,000. De Witt later pledged the bonds of the lime company secured by him from the Manufacturers Trust Company on this transaction with the Germantown bank as security for the lime company's obligations in that bank. Later on the bank credited upon its cash book " sundry account, De Witt $35,000 " and charged the $35,000 to the general fund account of the county.

The record contains positive evidence that De Witt, with the knowledge and consent of some of the Germantown bank officials, procured loans from an Albany bank and the Hudson River Trust Company with which to make good the $35,000 used for the purchase of the bonds of the lime company and returned to the general fund through the loans in the above banks.

The chain of circumstances, as it appears to me, is strongly convincing and suggests that some of the officers of the plaintiff bank knew all about the transactions which were being carried on and knew that county moneys were being diverted by De Witt both by deposit in his personal account in the Germantown National Bank and by drawing checks against the county treasurer's account to obtain the New York draft to open an account in the Hudson River Trust Company and by taking $35,000 as vice-president of the bank from the Federal Reserve Bank after hours in connection with the purchase of the bonds of the lime company which afterwards found their way into plaintiff bank.

The officers of the bank knew of the efforts of De Witt to reorganize the lime company and assisted him to some extent in the same.

The practice of the county treasurer's office was to use regular checks numbered in serial order by which it paid moneys from

different accounts in payment of duly audited claims against the county. The bank continually permitted the withdrawal of moneys on checks different from the usual checks and checks taken from the counter of the bank.

Some of the diversions were used to make good overdrafts in De Witt's personal account in the Germantown National Bank.

The record is replete with evidence showing that the plaintiff bank through its cashier and perhaps through its other officers knew what was being done with the money in the general account and that it was being diverted illegally; they evidently believed that De Witt was going to be able to reorganize the lime company in order to make good the shortage in the account, but instead he failed and the overdraft shortage existed at the end of his term.

The bank acquired an advantage through the diversion by receiving the bonds which De Witt, as vice-president of the bank, secured from the Manufacturers Trust Company and afterwards deposited as collateral security for notes of the lime company in the plaintiff bank and by having overdrafts in De Witt's personal account made good. It had actual notice and knowledge that diversions were being made by De Witt from the general account to his personal account and for purposes other than county purposes and thereby became privy to the diversions.

The judgment should be affirmed, with costs.

HILL, P. J., and RHODES, J., concur; BLISS, J., concurs in the result, with an opinion; McNAMEE, J., dissents, with an opinion.

BLISS, J. (concurring in result). The parties agree that the law applicable to this case is laid down in *Bischoff* v. *Yorkville Bank* (218 N. Y. 106). In that case it is stated that the defendant bank had no right to participate in a diversion of trust funds from their proper purposes and that " Its participation in a diversion of them would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it." It is further stated in the same opinion: " Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn."

Therefore, in the absence of benefit to the bank the question here is whether the bank knowingly assisted the county treasurer in diverting county funds to his own personal purposes.

Like my associate, Mr. Justice McNAMEE, I am entirely unwilling to accept the testimony of the defaulting county treasurer, Clyde H.

De Witt. He is unworthy of belief. Were one to believe him, one would be compelled to reject the oral testimony of several other witnesses and actual written contemporary records, such as those of the telephone company showing messages participated in by De Witt himself.

Nor do I think it necessary, as did the trial court, to go back of the first item of defalcation for which the defendant surety company seeks to recover on its counterclaim. This is the item of $30,398.01, which on July 7, 1928, was transferred by check from the "General Fund Account" of the Columbia county treasurer in the plaintiff bank to De Witt's personal account in the same bank. The deposit slip is in the handwriting of a book-keeper of the bank. On the same day there was retransferred by check from De Witt's personal account to the county's "General Fund Account" an item of $10,075 to repay a prior embezzlement. This deposit slip is partly in the handwriting of the cashier of the bank and partly in the handwriting of the same bookkeeper. Also on the same day there was cleared through to the bank for collection and paid a check of $15,000 drawn by De Witt on his personal account payable to the order of the First Trust Company of Albany. Within a very few days there was presented for collection and paid another check dated July 7, 1928, on De Witt's personal account, this one being for $5,323.01 payable or given to the Hudson River Trust Company of Hudson, N. Y. These three items of $10,075, $15,000 and $5,323.01 total $30,398.01 and completely exhausted the item of the same amount stolen by De Witt on July 7, 1928.

Before these transactions of July seventh De Witt's personal account was $48.72 overdrawn. Temporarily it had a credit balance, but when his transactions of that date were completed and all cleared and paid, his account was unaltered by them. This temporary change is insufficient to charge the defendant bank with having benefited from the embezzlement by De Witt of the $30,398.01 item, and could not have possibly furnished any motive for participation by the bank. In this respect I think that the findings of the trial court should be reversed and the participation by the bank in the embezzlements of De Witt placed on firmer ground.

A careful scrutiny of this transaction of July 7, 1928, shows clearly that the bookkeeper and cashier both had knowledge of the illegal diversion and joined in its accomplishment. They knew that county funds were being transferred illegally to De Witt's personal account and that he was making up a previous withdrawal by repaying to the county the item of $10,075 previously embezzled. These conclusions are irresistible.

Thus the case against the plaintiff is established by its own acts, for once chargeable with knowledge of De Witt's embezzlement, it was its clear duty not only to closely scrutinize his further transfers to his own accounts but to reveal that which had already occurred. It may be readily conceded that the rule of responsibility set forth in the *Bischoff* case is not to be extended (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394), but its application must not be denied where the circumstances clearly warrant.

The items for which the defendant surety company has had judgment on its counterclaim begin with the one of $30,398.01 on July 7, 1928. They consist of items totaling $46,398.01 transferred by De Witt directly into his personal account in the plaintiff bank, $4,000 cashed at this bank, and $36,601.99 deposited to his personal credit in the Hudson River Trust Company, and total $87,000. Of the amount of $36,601.99 deposited in the Hudson River Trust Company, one item, $3,601.99, was by cashier's check of the plaintiff bank. These were all transfers to De Witt personally and, in view of its knowledge of his machinations, the plaintiff may be held to have participated therein.

The judgment should be affirmed.

McNamee, J. (dissenting). Up until about January 6, 1930, the witness De Witt, former county treasurer, had maintained an enviable reputation for personal integrity and financial honesty, and had held public office for many years in his county, both by appointment and election, as well as the leading positions of a political party in his county. His standing and influence were such as to place him above suspicion and to reduce caution in others. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394.)

When the fact of his misconduct became known, it was discovered and it appears in the record that he was a felon many times over, by reason of grand larcenies, perjuries and forgeries; and he is now in prison for one of these felonies.

De Witt testified in the trial on a wide diversity of material facts, and his testimony is contradicted by practically every other witness sworn on those matters, including several witnesses who had no interest in the case, as well as by important documentary evidence. His testimony is essential to provide any support for the findings of fact upon which the judgment and the view of the trial court were based. I regard his testimony as unworthy of belief, and think that the rights of the parties should not be adjudicated thereon.

I vote to reverse the judgment.

Judgment affirmed, with costs.