BECKER, MOORE & CO., Inc., v. UNITED STATES FIDELITY & GUARANTY CO. et al.

No. 132.

Circuit Court of Appeals, Second Circuit.

Jan. 14, 1935.

George P. Keating and Love & Keating, all of Buffalo, N. Y. (S. H. Millener, of Buffalo, N. Y., of counsel), for appellant.

Roland Baxter, of Tonawanda, N. Y. (Edward C. Schlenker, A. C. Minahan, and Holland V. Williams, all of Buffalo, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, a manufacturing company, sued upon a fidelity bond given to indemnify it against the defalcations of its secretary, Watson. At the trial it proved the execution of the bond on October 25, 1929, and Watson's thefts of more than the penalty, and then it rested. The defense was that the company had given false answers on October 18, 1929, in a statement signed by its president, Moore, on the faith of which the bond had been issued. This statement was in form as follows:

"Employers General Statement.

"Payable to Becker, Moore & Co., Inc., Address, Michigan St., No. Tonawanda, N. Y. Employer's General Statement Applying to Employes Holding Position of Secretary."

Then followed nine questions, most of them subdivided, among which were the two here in question:

"Is any one employe now in debt to you? Explain.

"A. No.

"Do you know any circumstance tending to indicate that any one employe is not a proper person to bond?

"A. No."

The whole concluded with a statement that

"The undersigned * * * warrants the above statement * * * and agrees that such statement shall be taken as the basis and consideration of said bond."

At the same time Watson filled out and signed a statement to go along with Moore's. This contained answers to other inquiries, spoke of "the issuing of the Bond or Security hereby applied for," and was signed by Watson as "applicant." The occasion for the bond was that an earlier bond of another surety was expiring, and would have to be renewed. One, Humphrey, an agent of the surety, learning of this from Watson, went to Moore and asked for the renewal; Moore "ordered" the bond which issued in the company's name and of which it paid the premium. The answers made by Moore above quoted were not true; Watson had personally embezzled $500 before October 18, 1929, and had assisted Moore in Moore's own embezzlements of over $7,250 by entering them in the

books as accounts receivable, so making himself an accessory.

The bond having been written on the faith of the answers, the surety argued that it made no difference whether Moore's knowledge of Watson's misconduct should not be imputed to the company; for even so, it could not accept the benefit of the bond and disregard the means of its procurement. To this the company replied that Moore was not acting for it in the transaction, but for Watson, on whose application the bond had been issued. Moreover, even if Moore did act for it, still his knowledge should not be imputed to it because he was engaged at the time in a fraud upon his principal. The judge ruled that Moore was not acting as the company's agent, and that his statement was not its statement; in this following American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977. He denied the surety's motion for a directed verdict, and the appeal followed.

The company's chief reliance is the case just mentioned, but the situation there at bar seems to us to have been substantially different. O'Brien, the employee, wished to retain his post as the bank's cashier and made application for the necessary bond. It was O'Brien with whom the surety dealt, and because O'Brien needed a corroborative certificate, Collins, the bank's president, gave one, being engaged with him in defrauding the bank. The decision rested, as we understand it, upon the fact that Collins did not represent the bank in making this certificate; it was O'Brien's venture; a bond being required if he was to keep his place, and he undertaking himself to get one. Since Collins was acting only for O'Brien, and since it was no part of his duty to the bank to certify employees whose fidelity the bank did not seek to secure, what he said was not said on its behalf. The Supreme Court has twice in similar situations treated this decision as depending upon the fact that Collins was not the bank's agent when he made the statement. Guarantee, etc., Co. v. Mechanics', etc., Co., 183 U. S. 402, 423, 22 S. Ct. 124, 46 L. Ed. 253; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 350, 22 S. Ct. 833, 46 L. Ed. 1193. It is quite true that the opinion also invoked the exception to the ordinary doctrine, by which a principal is not charged with notice of what his agent learns when he is engaged in a fraud upon the principal. But that was a dictum, once Collins was shown not to have been the bank's agent pro hac vice. At any rate, as we shall show in a moment, so much of the opinion is not relevant here.

In the case at bar the surety did not deal with Watson at all, except that Humphrey learned from him that the existing bond was to expire. It is significant that he did not then broach the matter to Watson at all, but went at once to Moore with whom alone he dealt; it was Moore who "ordered" the bond and who made the false statement on which Humphrey relied; made it as part of the negotiations which resulted in its execution and delivery; made it not in his own name, but in the name and under the seal of the company. There would be nothing at all to gainsay this, even had Watson added the statement which he did, were it not for the fact that the form used appears to have been intended for an application made by the employee and not the employer; for a situation like that in Pauly's Case, supra, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977. That cannot, however, disguise the truth as to what took place; the company is not suing upon the application; and it is material only as part of the inducements on which the surety relied. At best it is no more than evidence that Watson, not his employer, was the person with whom it dealt. We know that in fact he was not; that his part was only to furnish what was required to put through a bargain made between others.

If so much be granted, the rest is very simple. Although Moore's answers were not warranties, not being embodied in the policy, they were representations on the faith of which the bond was delivered, and, if material to the risk, must have been true, or the bond could not survive. The good faith of the insured is no defense in that event; it has been settled law for more than a century and a half, that such collateral misrepresentations, though honestly made, will avoid a policy. Nonantum Investment Co. v. Maryland Casualty Co., 56 F.(2d) 329 (C. C. A. 1); Carpenter v. American Ins. Co., Fed. Cas. No. 2,428; Carrollton Furniture Mfg. Co. v. Am. Credit Co., 115 F. 77 (C. C. A. 2); Snare & Triest Co. v. St. Paul F. & M. I. Co., 258 F. 425 (C. C. A. 2); Dennistoun v. Buchanan, 3 Bligh 202; Macdowell v. Fraser, 1 Doug. 160; Pawson v. Watson, 2 Cowp. 785; Edwards v. Footner, 1 Camp. 530; Armour v. Transatlantic F. I. Co., 90 N. Y. 450; Eastern Dist. Piece Dye Works v. Travelers' Ins. Co., 234 N. Y. 441, 449, 450, 138 N. E. 401, 26 A. L. R. 1505, semble. The truth as to Watson's indebtedness even in its most meagre form was material to the risk. He was liable for nearly $8,000 in all; and the explanation demanded was forestalled by the denial. No truthful explanation could

have been given which would not have disclosed facts vitally material to a fidelity bond. For this reason it is not necessary, as we have said, to decide whether in a situation like this, notice to Moore was notice to the company; whether, in short, the exception to the usual doctrine applied. We do not imply that we believe that it did; the limits of the exception are narrow and its justification is indeed dubious at best; it appears to derive from the theory that a principal is bound only because the law will presume that his agent in fact tells him all he knows which is material to his affairs. Mechem, Agency, §§ 1815, 1817. How far that is now law may be an open question.

Judgment reversed; new trial ordered.