**HALL v. AETNA CASUALTY & SURETY CO.**

No. 223.

Circuit Court of Appeals, Second Circuit.

May 17, 1937.

Morgan & Lockwood, of New York City (Mark W. Maclay and Thomas A. Sully, both of New York City, of counsel), for appellant.

Gibboney, O'Brien & Hayes, of New York City (James V. Hayes and Stuart G. Gibboney, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action by the receiver of the Germantown National Bank, of Germantown, N. Y., upon a bond of the Ætna Casualty & Surety Company to indemnify the bank to the amount of $25,000 against losses incurred "Through any dishonest act wherever committed, of any of the Employees, as defined in section 6 hereof, whether acting alone or in collusion with others," and losses "Through robbery, burglary, larceny * * * theft, hold-up or destruction. * * *"

Section 7(d) of the bond provided that it did not cover "Any loss resulting directly or indirectly from any act or acts of any director of the Insured, other than one employed as a salaried official. * * *"

Section 8 provided that: "No statement made in the application for this bond or otherwise submitted by or in behalf of the Insured shall be deemed a warranty of anything except of the fact that the statement is true to the best of the knowledge and belief of the person making it."

Section 16 provided that the bond should be subject to the "condition" that: "At the earliest practicable moment, and at all events not later than ten days after the Insured shall discover any loss here-

under, the Insured shall give the Underwriter notice thereof by registered letter or telegram, addressed to it at its home office, and shall also, within three months after such discovery, furnish to the Underwriter at its home office affirmative proof of loss with full particulars. * * * "

Du Bois, the cashier of the bank, was told by the broker who delivered the bond that it was delivered with the understanding that the application must be signed and forwarded to the Albany office of the insurance company.

The application for the bond was signed "Germantown National Bank By J. R. Du Bois, Cashier." The application contained a representation that an audit of the cash, securities, and accounts of the bank had been made on June 18, 1929, and that all accounts were found to be correct and all cash and securities were found on hand or properly accounted for. It also contained the representation that the losses known to have been sustained from any of the causes against which indemnity was to be given by the bond were $450, and the further representation that the present officers and employees of the bank had always, to the best of the bank's knowledge and belief, performed their respective duties faithfully and that: "There has never come to the notice or knowledge of the Applicant any act, fact or information indicating or tending to indicate that any of the said officers or other Employees are unreliable, deceitful, dishonest or unworthy of confidence."

One De Witt was a stockholder, director, and sole vice-president of the bank and was treasurer of Columbia county, N. Y. He was also an officer of a concern known as the Pittsfield Lime & Stone Company, which owed $60,000 to the Manufacturers Trust Company, secured by about $266,000 of bonds. In March, 1928, De Witt, whose balance with the bank was then only $376.83, arranged with Du Bois to have a credit of $35,000 from the account of the bank with the Federal Reserve Bank transferred to the Manufacturers Trust Company, thus releasing the collateral of the Pittsfield Lime & Stone Company. Under the instructions of Du Bois, the cashier, an employee of the bank and his assistant, Pauline Moore, charged this $35,000 item on the books of the bank to a suspense account known as "Sundry," on which she placed the notation "De Witt

Federal." Three days later she credited the "Sundry" account with $35,000 and charged the account of De Witt as treasurer of Columbia county with the same amount. On March 5 and 8, 1928, De Witt deposited $45,000, borrowed from other banks, to his personal account in the Germantown Bank, of which $25,000 came from the First Trust Company of Albany and $20,000 from the Hudson River Trust Company. He used $35,000 of this deposit to make good the prior charge against his account as county treasurer. On June 5, 1928, he repaid the First Trust Company of Albany $10,075 by check on his personal account in the Germantown Bank which was charged, not against his personal account because of lack of funds, but against his account as county treasurer. On July 7, 1928, he drew a check for $30,398.01 on his account as treasurer and delivered it to Pauline Moore, who made out a deposit slip for credit to his personal account. He then drew checks aggregating $20,323.01 on that account and used them to pay off the balance of his loans from the First Trust Company of Albany and to reduce by $5,000 his loan from the Hudson River Trust Company. Du Bois and Pauline Moore made out a deposit slip, charged the balance of $10,075 against his personal account, and credited his account as county treasurer with a similar item to offset the check of June 5 which he had used to make the payment to the First Trust Company of Albany. As the net result of the above there was up to this time a misappropriation of $30,398.01 of the funds of Columbia county. On April 27, 1929, Du Bois delivered to De Witt a cashier's check for $3,601.99 which was charged to the latter's account as county treasurer and used by him personally to open an account with the Hudson River Trust Company. On August 31, 1929, De Witt withdrew from the bank a further sum of $2,000 which was charged against his treasurer's account and was likewise used by him to add to his personal account with the Hudson River Trust Company. On September 19, 1929, he withdrew a further sum of $1,000 from his account as treasurer and deposited it with the Hudson River Trust Company. The total of the above withdrawals from the account of De Witt as county treasurer prior to the date of the inception of the bond furnished by the defendant was approximately $37,000.

Between October 4, 1929, when the bond became effective, and October 20, 1930, De Witt, its vice-president, diverted from his account as treasurer of Columbia county in the Germantown Bank further sums aggregating $50,000. The sums were abstracted by checks as such treasurer which were paid by the bank. Of these, checks to the amount of $16,000 were deposited to the credit of his personal account with the bank, checks to the amount of $33,000 were deposited to the credit of his personal account with the Hudson River Trust Company, and one check for $1,000 was cashed by him at the bank. They all represented appropriations of county funds for his own purposes. All the checks, as well as his prior unlawful withdrawals of $37,000, were charged against the account of the county treasurer and resulted in an aggregate loss to the Germantown Bank of $87,000 which the latter could not recover. The Bank brought an action against the county and the surety upon De Witt's bond as treasurer to recover $64,195.88. It not only failed to recover in the action but suffered a judgment upon a counterclaim interposed by the county for $22,805.22. Germantown Nat. Bank v. Employers' L. A. Corp., Ltd., 238 App.Div. 31, 263 N.Y.S. 373, affirmed 263 N.Y. 654, 189 N.E. 741.

Judge Galston directed a verdict for the plaintiff in the present action for the amount of $25,000, with interest from August 22, 1933. Upon that verdict the judgment for $29,260.32 was entered, from which this appeal has been taken. The court based its decision upon the ground that the acts of the cashier Du Bois in facilitating the misappropriations of De Witt which had resulted in losses to the Germantown Bank of $50,000 were dishonest and that the resulting losses were within the terms of the bond of indemnity.

The primary argument relied upon in defense of the plaintiff's claim is that Du Bois, when cashier of the bank, made material misrepresentations, when he signed the application for the bond, in stating that an audit had been made June 18, 1929, that all accounts were then found to be correct, all cash and securities found to be on hand or properly accounted for, that no losses above $450 had been sustained, and that none of the officers and employees was dishonest and unworthy of confidence. The court held that the bank was not bound by the representations of Du Bois because, when signing the application for the bond of indemnity in the name of the bank, he was making the application so far as he personally was concerned in order to meet a requirement of the by-laws that he should furnish a bond. In such circumstances the representations in the application were not those of the bank, American Surety Co. v. Pauly, 170 U.S. 133, 18 S. Ct. 552, 42 L.Ed. 977, and did not bind it, as did those we dealt with in Becker, Moore & Co. v. United States Fidelity & Guar. Co., 74 F.(2d) 687 (C.C.A.2). In American Surety Co. v. Pauly a bond was given to indemnify a national bank against the dishonesty of the cashier. It was based upon the latter's application accompanied by answers to questions relating to his history, habits, and financial condition, and by a certificate signed by the president to the effect that to the best of his knowledge the cashier had always performed his duties in a faithful and satisfactory manner, that his accounts had been found correct, and that he was not, to the knowledge of the president, in arrears or in default. The president was at the time engaged with the cashier in defrauding the bank. The Supreme Court held that the surety was liable because the president in making the certificate did not represent the bank, for the reason that he had no authority to give it and was acting only for his personal ends; also because the cashier in applying for the bond was acting only for himself and not for the bank. In the case at bar Du Bois was in the same position as the cashier in the Pauly Case. In applying for a bond to indemnify his bank against his own dishonesty he was acting for himself, and not for the bank, and in the false representations in his application he was concealing facts which would have prevented the bond from being written had they been disclosed. Our decision in United States Fidelity & Guar. Co. v. Muir, 115 F. 264, certiorari denied 187 U.S. 648, 23 S.Ct. 847, 47 L.Ed. 348, was to the same effect. As suggested by Judge Lowell in Ætna Indemnity Co. v. City of Haverhill, 142 F. 124, 125 (C.C.A. 1), such bonds would have little practical value if an obligee is to be bound by dishonest representations by the very persons to indemnify against whose fraudulent conduct the bonds are given. See, also, Maryland Casualty Co. v. Tulsa Industrial L. & Inv. Co., 83 F.(2d) 14, 105 A.L.R. 529 (C.C.A.10).

In Becker, Moore & Co. v. United States Fidelity & Guar. Co., 74 F.(2d) 687 (C.C.A.2), the misrepresentation was not, as here, merely by the bonded employee but also by the president who was acting for the obligee; accordingly the surety company was not held liable.

It is true that the bond by its terms covered not only Du Bois, the cashier, but also Pauline Moore and two other bookkeepers. Whatever may have been the situation in respect to losses incurred through Pauline Moore or any of the other bookkeepers, those arising from dishonest acts of Du Bois were within its terms and, under the rule of the Supreme Court in American Surety Co. v. Pauly, supra, were liabilities of the defendant herein. While Du Bois appropriated no county funds to his personal use, he had such an intimate relation to the business of the bank that he was responsible for allowing the checks which De Witt drew on the county funds to go through, and thus created the losses which the bank has suffered. It is quite immaterial that he did not profit personally in the fraud. Brandon v. Holman, 41 F.(2d) 586, 588 (C.C.A.4); United States F. & G. Co. v. Egg Shippers' S. & F. Co. (C.C.A.) 148 F. 353, 355. That the acts of Du Bois were dishonest is not only shown by his general course of conduct in clearing checks of De Witt in furtherance of the misappropriations but in allowing credits of interest upon his accounts when they were heavily overdrawn.

We think that the provisions of section 8 of the bond that no statement made in the application "shall be deemed a warranty of anything except of the fact that the statement is true to the best of the knowledge and belief of the person making it," do not limit the liability of the surety company. This is because, under the rule of American Surety Co. v. Pauly, the representations in the application so far as they related to the acts or knowledge of Du Bois were not those of the bank but only of Du Bois himself. To the extent that Du Bois was applying for a bond of indemnity against his own acts of dishonesty, his representations were not those of the bank but of himself when engaged in the pursuit of his own ends.

The contention seems to be made that the action must fail because the Germantown Bank received benefits through the transactions of De Witt in the release of the bonds of the Pittsfield Lime & Stone Company from the Manufacturers Trust Company's lien. But, though those bonds were released and placed in the vault of the bank for a time, they were afterwards redelivered by the latter to De Witt and became entirely worthless. In any event, there is no proof that the misappropriation of $50,000 made after the bond of indemnity was furnished by the defendant had any relation to the claim of the bank against the Pittsfield Lime & Stone Company or was of any benefit to the bank temporarily or otherwise.

It is argued that this action did not lie because the bank did not give notice of loss to the defendant within ten days after discovery of its loss, as required by section 16 of the bond. But, while the president and directors learned on January 6, 1931, that De Witt was a defaulter, they apparently did not learn of the dishonesty of Du Bois until January 18 or 20, 1931, when they were shown a false certificate of the amount on deposit in the account of the county treasurer signed by Du Bois. Thereupon notice of loss was given to the surety company on January 22, 1931. The knowledge of Du Bois, who had aided in the defalcation, did not affect the bank.

It is also argued that the loss resulted "directly or indirectly" from the acts of De Witt, who was a director, not a salaried employee, and therefore was excepted by section 7(d) of the bond from its coverage. But the court below properly held that the acts of Du Bois in honoring De Witt's checks occasioned the losses which were within the provisions of the covenant of indemnity. De Witt was not acting as a director but only as a depositor when he diverted the funds, and his acts would not have resulted in any loss to the bank if Du Bois had not participated in the wrong by allowing his checks to be paid.

The contention that a settlement by the receiver of his claim against five of the directors of the bank resulted in the discharge of the defendant as surety, because it impaired its right of subrogation, is entirely without merit. The subrogation would only be to claims that the bank might have against Du Bois and Moore. Causes of action against them, even though valueless, still exist. A settlement with the directors is immaterial to the present issues.

In our opinion, the defendant's obligation to indemnify the bank has not been

performed and the losses suffered exceed the amount of its obligation under the bond. Accordingly, the judgment is right and ought to stand.

Judgment affirmed.