## ÆTNA CASUALTY & SURETY CO. v. CATSKILL NAT. BANK & TRUST CO.
### No. 250.

Circuit Court of Appeals, Second Circuit.
March 13, 1939.

Bond, Schoeneck & King, of Syracuse, N. Y. (Robert E. Dineen and Howard H. Cannon, and Elmer W. Beasley, all of Syracuse, N. Y., of counsel), for plaintiff.

Herrick, Hoppin & Thorne, of New York City (Walter R. Herrick, of New York City, of counsel), for defendant.

Before AUGUSTUS N. HAND and CHASE, Circuit Judges, and PATTERSON, District Judge.

PATTERSON, District Judge.

The action is to recover from a bank for alleged participation in a breach of trust. One Betts, a lawyer in Catskill, New York,

was guardian of the property of three infants, James Birchett, Walter Birchett and Francis Birchett. He maintained deposit accounts for each infant with the defendant bank, these accounts standing in his name as guardian for the respective infants. He also had an individual deposit account with the bank. He died in May, 1934. Shortly after his death it came to light that he had embezzled large sums of money belonging to his wards. In the case of Francis Birchett, the only case involved here, he had transferred $6,709.76 in guardianship funds to his individual account with the bank, later checking the money out of that account, applying a small part of it to the ward's use and spending the bulk of it on himself; and he had also transferred $6,300 from the guardianship account to the guardianship account of James Birchett, to make good funds embezzled by him from that account. There were five such transactions: the first on July 9, 1931, when Betts deposited in his individual account checks for $4,709.76 payable to one Kruger and indorsed over to Betts as guardian of Francis Birchett, the checks being guardianship property; the second on July 5, 1933, when he transferred $2,500 from the account of Francis Birchett to that of James Birchett by counter receipt at the bank; the third on August 21, 1933, when he transferred an additional $3,800 from the account of Francis to that of James by check and counter receipt; the fourth on January 11, 1934, when he transferred $1,000 from the account of Francis to his individual account by counter receipt; the fifth on March 1, 1934, when he transferred $1,000 from the account of Francis to his individual account by counter receipt. During this period Betts made many deposits of his own moneys in the individual account. In fact, the account was an active one both in deposits and withdrawals.

None of the Francis Birchett funds went to the advantage of the bank, save for three small sums. On January 31, 1934, Betts paid the bank $1,201.60 by charge against his individual account, in reduction of a note held by the bank on which he was indorser. An audit of his account put in evidence at the trial showed that his own funds then in the account amounted to $1,005.49. The rest of the payment, $196.11, came from guardianship funds in the account. On February 2, 1934, Betts paid the bank $30 by charge against his individual account, the payment being for interest on another note held by the bank on which

he was indorser. The entire balance then in the account was shown by the audit to be guardianship funds. On March 8, 1934, Betts drew checks for $264.97 in payment of taxes against property in a foreclosure action he was attending to for the bank. The bank was billed for this amount and credited it to the individual account. The audit of the account showed that when these checks were later presented to the bank and were paid, the personal funds in the account amounted to $149.62. The balance of the amount paid, $115.35, came from guardianship funds in the account.

The plaintiff, surety on the bond of Betts as guardian of Francis Birchett, made good the embezzlements, succeeded to the rights of the guardianship estate and brought action against the bank, charging that it was liable for the funds embezzled by Betts from the guardianship account. A jury was waived. The judge held for the bank on the main issue. He found that Betts was of good reputation, of good standing as a lawyer, that he was a director, stockholder and attorney of the bank, and that the bank had no knowledge or notice of his defalcations and did not assist him in them. He held the bank, liable, however, for the sums already referred to, totalling $341.46, which it had received out of guardianship moneys in the Betts personal account, although it was not aware that these payments were from guardianship moneys. He held the bank also for an amount of $41.50, paid on October 24, 1932, by check drawn by Betts on his individual account and payable to the county clerk. This payment was for clerk's fees in a matter in which Betts represented the bank. The individual account was then made up entirely of moneys from the James Birchett guardianship account. Judgment was entered in the plaintiff's favor for $382.96, with interest. Both parties appealed.

We accept the finding of the District Court that the bank acted in good faith throughout and did not know that Betts was using guardianship funds for his personal purposes. The finding has substantial support in the evidence. The bank knew of course that Betts was from time to time depositing guardianship funds in his individual bank account, mingling them with his own funds in that account. But it was not aware that in later withdrawing money from his individual account he was embezzling funds held for his ward; for all it knew, the guardianship funds deposited in

the Betts account were being applied to guardianship purposes and the personal funds to personal purposes. The bank knew also that Betts was transferring funds from one guardianship account to another, but such transfers, for all it knew, were lawful and proper.

By the law of New York, and that law controls the decision of the case, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the transfer of funds from the guardianship account to the personal account of the guardian was not a misappropriation by the guardian, nor did it serve as notice to the bank of any wrongful purpose on his part. While the deposit of trust funds in a trustee's personal account is deplored as an "unwise and hazardous" practice, a practice now forbidden by statute, Surrogates Court Act, N.Y. section 231, a bank is warranted in assuming that the trustee will nevertheless apply the funds to the proper purpose. Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A.1916F, 1059; Clarke v. Public Nat. Bank & Trust Co., 259 N.Y. 285, 181 N.E. 574. The same is true of a transfer from one trust account to another. Whiting v. Hudson Trust Co., 234 N.Y. 394, 406, 138 N.E. 33, 25 A.L.R. 1470. This rule is with the weight of authority elsewhere, although much might be said in favor of imposing liability for losses on a bank which tolerates the deposit in a trustee's personal account of items that are marked trust funds plainly on their face. The books are full of cases where such a deposit has been the first step toward embezzlement.

Once granted that funds known by the bank to be trust funds may be deposited in the trustee's personal account without responsibility on the bank's part as to their ultimate diversion, it is almost self-evident that the bank incurs no liability in merely honoring checks drawn against the account in favor of the depositor himself or of third persons. Bischoff v. Yorkville Bank, supra; Clarke v. Public Nat. Bank & Trust Co., supra. It has the right to assume that in withdrawing money from his account the depositor will deal lawfully with the trust funds. The bank is obliged by contract and business necessity to honor checks promptly, and has neither the time nor the facilities to act as detective on the conduct of depositors. In cases like the present one, where personal funds as well as trust funds have been deposited in the individual account, it would be utterly unreasonable to expect the bank to supervise withdrawals. Without a thorough audit of the account and of the depositor's own records on deposits and withdrawals whenever a check was presented, the bank would not be informed as to what part of the balance in the account represented trust funds and what part represented personal funds. The situation is different where a bank has actual knowledge that trust funds in the account are being misused or dissipated in a transaction. There the bank is liable for funds misappropriated, and in New York the view is taken that it is liable also for all later misappropriations. Bischoff v. Yorkville Bank, supra; Germantown National Bank v. Employers' Liability Corporation, 238 App.Div. 31, 263 N.Y.S. 373, affirmed, 263 N.Y. 654, 189 N.E. 741.

It follows that the defendant is not liable broadly for the losses caused by Betts' embezzlements. The defendant, as the District Court properly found, had no knowledge or notice that Betts was looting the guardianship account. The plaintiff argues that the circumstances put it on constructive notice. This is merely saying that if the bank had made an investigation it might have discovered what was going on. As pointed out above, the bank was under no duty to investigate. The plaintiff also presses the Bischoff case, where the bank's liability ran to a large figure. But in that case the court found that the bank had knowledge of the fact that the administrator was using estate funds in his personal account to pay an individual obligation to the bank. The bank had "absolute proof" of the misappropriation and was held liable for that misappropriation and all later ones. Here the defendant knew of no misappropriations by Betts. It did not know that the moneys paid it by Betts in 1934 on personal transactions were trust moneys. He had made a great many deposits of personal funds, ample to cover those small payments, and the bank had no means, short of an audit, of discovering that the prior withdrawals from the account had been for personal uses and had depleted or exhausted the personal funds in the account. See Gilliland v. Lincoln-Alliance Bank, 239 App.Div. 68, 69, 264 N.Y.S. 779, affirmed, 264 N.Y. 517, 191 N.E. 543.

It remains to consider the liability of the defendant for the relatively small sums paid to it by Betts from his individual account, whereby guardianship funds were diverted in satisfaction of Betts' personal

**530**

obligations to the bank. Where a bank takes a check drawn against known or marked trust funds in payment of an obligation owed by the trustee personally, it runs a plain risk of having to make restitution to the trust. Ward v. City Trust Co., 192 N. Y. 61, 84 N.E. 585; Squire v. Ordemann, 194 N.Y. 394, 87 N.E. 435. The case is not so clear where the bank takes, in payment of a depositor's personal debt, a check against his personal account or an offset against his personal account, knowing that trust funds have been mingled with personal funds in that account. There the bank does not know, ordinarily at least, that it is receiving trust funds in discharge of the trustee's individual obligation. It has, as we have seen, the right generally to assume that the trustee is making proper application of the funds in the account. But the law is settled that in such a case the bank must make good to the trust, to the extent that payment of the depositor's debt in fact depletes trust funds in the account. While it has no knowledge that it is receiving trust funds, it does know of the presence of trust funds in the account, and this factor is deemed enough to bar it from deriving a direct advantage through what is shown later to have been a diversion of trust funds. It has no equity equal to that of the real owner. Bischoff v. Yorkville Bank, supra, at page 112, 112 N.E. 759. See also Central National Bank v. Insurance Co., 104 U.S. 54, 26 L.Ed. 693; Maryland Casualty Co. v. City National Bank, 6 Cir., 29 F.2d 662; Austin W. Scott, Participation in a Breach of Trust, 34 Harv.L.Rev. 475.

The District Court was therefore right in holding the defendant answerable for diversions of guardianship funds from which it derived direct benefit. The liability covers the sums received by the bank in 1934, an aggregate of $341.46. It was error, however, to include in the amount for which the defendant was liable the $41.-50 paid to the county clerk by Betts in 1932 by check against his individual account. The funds then in the account were those of the James Birchett guardianship. By that payment no inroad was made on the funds of the Francis Birchett guardianship, in whose right the plaintiff brought suit. It makes no difference that a year later the shortage in the James Birchett account was made good out of the Francis Birchett account. This minor error may be corrected without a new trial, the case having been tried without a jury and the facts having been fully developed. Fort Scott v. Hickman, 112 U.S. 150, 5 S.Ct. 56, 28 L.Ed. 636. The judgment will be reduced by $41.50 and interest, and so modified will be affirmed.