# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2787

_____

Tactical Stop-Loss, LLC, et al.,      *
     *

    Plaintiffs - Appellants,      *
     *   Appeal from the United States
v.     *   District Court for the
     *   Western District of Missouri.
Travelers Casualty and Surety      *
Company of America,      *
     *
    Defendant - Appellee.      *

_____

Submitted:  April 14, 2011
Filed:  September 30, 2011

_____

Before LOKEN and MURPHY, Circuit Judges, and JARVEY,[*] District Judge.

_____

LOKEN, Circuit Judge.

Tactical Stop-Loss and an affiliate (the "Tactical Group") administer trust accounts for insurance companies that provide stop-loss coverage to employee-benefit-plan sponsors. Tactical Group purchased a Crime Policy from Travelers Casualty and Surety Company insuring against loss from theft or forgery by an employee "acting alone or in collusion with other persons," but excluding loss "resulting directly or indirectly from any fraudulent, dishonest or criminal act by . . .

_____

[*]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

an Officer-Shareholder, whether acting alone or in collusion with others." The Policy defined Officer-Shareholder as "any officer who has a twenty-five percent (25%) or greater ownership interest."

Tactical Group filed a claim under the Policy when it discovered that its Chief Executive Officer, James E. Fox, a forty-percent shareholder, had fraudulently transferred $930,104.31 from Tactical Group's operating account to his personal bank account with the assistance of Chief Operating Officer Terry M. Griffith, who was not a shareholder. When Travelers did not promptly advise whether the claim would be paid, Tactical Group commenced this diversity action, asserting claims for breach of the insurance contract and for vexatious refusal to pay. Applying Missouri law, the district court[1] granted Travelers summary judgment, concluding that the Policy unambiguously excluded losses caused by Fox, and by Griffith acting in collusion with Fox. Tactical Group appeals. Reviewing the district court's interpretation of the Policy and its grant of summary judgment *de novo*, as Missouri law requires, we affirm. See DeMeo v. State Farm Mut. Auto. Ins. Co., 639 F.3d 413, 415 (8th Cir. 2011) (standard of review).

In 2006, Griffith noticed transfers from Tactical Group's operating account to an unknown bank account. Fox admitted he was transferring money to his personal account. Rather than blow the whistle, Griffith helped Fox conceal his on-going embezzlement. She transferred funds from client trust accounts to the operating account to cover shortfalls caused by Fox. She reported to Fox the amounts of money transferred to his personal account every month. She created a fraudulent bank statement for one trust account to conceal the theft from a client. She also failed to answer inquiries from claims and accounting personnel that would divulge information about the scheme and misled the Tactical Group's auditors about trust

---

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge of the United States District Court for the Western District of Missouri.

account liabilities.  Fox rewarded Griffith for these efforts, paying her an inordinate salary for her position, paying bonuses when "there was enough cash flow," and employing her son, daughter-in-law, and former husband at Tactical Stop-Loss.

Tactical Group discovered the loss and in April 2008 submitted a claim under the Policy a few days after Fox committed suicide.  The sworn Proof of Loss stated that the cause of loss was "Griffith acting either alone or in collusion with Fox to misappropriate company funds and funds belonging to the Company's clients."  In an earlier Notice of Claim letter, Tactical Group explained that its claim was not based on Fox's actions "as we realize that said loss is excluded."  However, "evidence that we have now uncovered demonstrates that Griffith not only aided and abetted Fox in stealing from [Tactical Group and clients] but that her conduct was intentional and unlawful, both by her silence and her affirmative acts."

**A.**  On appeal, Tactical Group first argues that the Policy's insuring clause unambiguously provides coverage for losses caused by the dishonesty of non-shareholder employee Griffith, whether or not she acted "alone or in collusion with other persons" such as Officer-Shareholder Fox.  The Officer-Shareholder exclusion applies to loss caused by the acts of Fox, Tactical Group concedes, but not to loss caused by the acts of a colluding employee, Griffith.  Relying on the Second Circuit's decision in Hall v. Aetna Casualty & Surety Co., 89 F.2d 885 (2d Cir. 1937), Tactical Group argues that coverage exists if Griffith's acts were a "but for" cause of the loss, regardless whether Fox was involved.  The purpose of the exclusion, Tactical Group asserts, is to permit the insurer to limit coverage by aggregating losses from multi-employee conspiracies under a single loss limitation, not to deny coverage when a non-excluded employee has caused loss while colluding.[2]

_____

[2]Tactical Group cites cases in which a "collusion with others" provision in a policy's *insuring* clause was held to limit a *covered* loss to a single policy limit.  See Scirex Corp. v. Fed. Ins. Co., 313 F.3d 841, 851-52 (3d Cir. 2002).  Here, by contrast, the issue is whether the Policy *covers* losses caused by the collusive acts of Griffith

Rejecting this interpretation of the Policy as "strained, at best," the district court concluded that the Officer-Shareholder exclusion unambiguously denies coverage for the loss, even if caused in part by employee Griffith's dishonesty, because the undisputed evidence shows that "acts alleged to have been committed by Griffith were all part of her active participation" in Fox's criminal scheme, and the Officer-Shareholder exclusion unambiguously excludes "losses attributable to the Officer-Shareholder [Fox] and the 'other' colluding with him." We agree. The Policy excludes loss resulting from the dishonest acts of Officer-Shareholder Fox, "whether acting alone or in collusion with others." The exclusion includes losses "resulting directly *or indirectly*" from the Officer-Shareholder's dishonesty, reflecting a clear intent to exclude such a loss even if the colluder's acts were a "but for" cause. The policy at issue in Hall was materially different: the term "whether acting alone or in collusion with others" appeared in the insuring clause, but the provision excluding loss caused by "acts of any director of the Insured" did not include acts "in collusion with others." 89 F.2d at 885. Thus, unlike the Officer-Shareholder exclusion here at issue, the exclusion in Hall did not unambiguously include the acts of colluders.

It is not genuinely disputed that the acts of Griffith were all part of her active collusion in Fox's crime.[3] Therefore, applying the exclusion to the facts of this case is consistent with the Missouri public policy against "allow[ing] one to insure against one's own thefts, dishonest acts or intentionally inflicted damage." East Attucks Cmty. Housing, Inc. v. Old Republic Sur. Co., 114 S.W.3d 311, 319 (Mo. App. 2003). It would be inconsistent with this public policy, as well as contrary to the plain meaning of the exclusion, to allow the insured to recover an otherwise excluded loss simply because the dishonest owner persuaded a lesser employee to help him

despite the "collusion with others" provision in the Officer-Shareholder *exclusion*.

[3]Although Tactical Group asserts that Griffith "acted independently" in causing the loss, we agree with the district court that these assertions "are belied by the allegations and evidence in this case."

perpetrate the theft. Like the acts of minor children in <u>In re Payroll Express Corp.</u>, 216 B.R. 344, 364 (S.D.N.Y. 1997), Griffith's dishonest conduct did not independently cause the loss that was proximately caused by Fox's theft. Thus, we need not consider whether the exclusion would extend to loss caused by a dishonest lesser employee who perpetrated a distinct scam in knowing collaboration with a dishonest owner's independent scam. <u>Cf.</u> <u>Purdy Co. of Ill. v. Transp. Ins. Co.</u>, 568 N.E.2d 318, 322-24 (Ill. App. 1991).[4]

Tactical Group further argues that, if we properly apply Missouri's "reasonable expectations" doctrine, we must conclude that the Policy unambiguously provides coverage. We disagree. "Absent . . . statutory or public policy consideration, the principle of 'reasonable expectations' is of no avail to alter the terms of an otherwise unambiguous policy of insurance." <u>Nabil v. State Farm Mut. Auto. Ins. Co.</u>, 877 S.W.2d 177, 179 (Mo. App. 1994). Here, the Officer-Shareholder exclusion is consistent with Missouri public policy. <u>East Attucks</u>, 114 S.W.3d at 319. Its unambiguous terms must be enforced.

**B.** Alternatively, Tactical Group argues that its claim is covered because the Officer-Shareholder exclusion is ambiguous. Missouri courts construe policy language that is susceptible to two meanings favorably to the insured, particularly "[p]rovisions restricting coverage." <u>Meyer Jewelry Co. v. Gen. Ins. Co. of Am.</u>, 422 S.W.2d 617, 623 (Mo. 1968). But exclusions that "are clear and unambiguous within the context of the policy as a whole . . . are enforceable." <u>Todd v. Mo. United Sch. Ins. Council</u>, 223 S.W.3d 156, 163 (Mo. 2007). Ambiguity arises when "duplicity, indistinctness, or uncertainty" makes the policy "reasonably open to different

---

[4]Missouri law generally provides that, when there are concurrent proximate causes of an injury, a liability insurer is liable so long as one is a covered cause. <u>See</u> <u>Bowan v. Gen. Sec. Indem. Co. of Ariz.</u>, 174 S.W.3d 1, 5 (Mo. App. 2005).

constructions." <u>Krombach v. Mayflower Ins. Co.</u>, 827 S.W.2d 208, 210 (Mo. banc 1992) (citations omitted).

Tactical Group focuses its argument on the use of an undefined word, "others," in both the insuring clause and the exclusion. This creates an ambiguity, Tactical Group suggests, as to whether the exclusion applies only to collusion with non-employees, not to collusion with employees such as Griffith whose dishonesty is covered in the insuring clause. Like the district court, we disagree. The insuring clause limits coverage to theft by "employees," so the reference to "in collusion with other persons" necessarily refers to collusion with non-employees. The term "collusion with others" in the Officer-Shareholder exclusion, on the other hand, must be construed by reference to its antecedent, the person whose dishonesty is excluded, in this case Officer-Shareholder Fox. <u>See</u> <u>United States v. Brumley</u>, 116 F.3d 728, 741 (5th Cir.) (en banc) (Jolly, J., dissenting) ("Grammarians teach that the word 'another,' when used as a pronoun, is an indefinite pronoun which has no specific meaning in and of itself but draws its meaning from the context in which it is used."), <u>cert. denied</u>, 522 U.S. 1028 (1997). Thus, consistent with Missouri public policy, the exclusion unambiguously includes loss caused by an owner acting in collusion with other employees. We agree with the district court that the Officer-Shareholder exclusion is unambiguous and excludes Tactical Group's claim.

**C.** Our decision that the Policy does not cover Tactical Group's claim for loss caused by the dishonest acts of Griffith means that we need not consider the claim that Travelers vexatiously refused to pay that claim. <u>See</u> <u>Calvert v. Safeco Ins. Co. of Am.</u>, 660 S.W.2d 265, 269 (Mo. App. 1983).

The judgment of the district court is affirmed.

_____

-6-